Kevin JOHNSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 379S81.

Supreme Court of Indiana.

Jan. 23, 1980.

William T. Lawrence, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of two counts of first degree murder (traditional murder and felony murder), Ind.Code § 35–13–4–1 (Burns 1975), commission of a felony while armed, to wit: robbery, Ind.Code § 35–12–1–1 (Burns 1975), and conspiracy to commit a felony, to wit: armed robbery, Ind.Code § 35–1–111–1 (Burns 1975). He was sentenced to an indeterminate term of two (2) to fourteen (14) years upon the conspiracy charge and life imprisonment upon one of the murder charges. His appeal presents the following issues:

(1) Whether the verdicts were supported by sufficient evidence.

(2) Whether the verdicts were contrary to law because they were not supported by sufficient evidence.

(3) Whether defendant was denied a fair trial when prospective black jurors were challenged peremptorily by the State.

(4) Whether the trial court erred when it limited defendant's direct voir dire of the jury to twenty (20) minutes.

(5) Whether the trial court erred in admitting into evidence, over timely objection, photographs although the verifying witness was not present when they were taken.

(6) Whether the trial court erred in admitting into evidence, over defendant's objection, a bullet removed during the autopsy when another bullet had previously been identified and admitted into evidence as the bullet removed from the victim's body.

\*  \*  \*  \*  \*  \*

ISSUES I & II

Defendant's first two assignments of error can be consolidated as both challenge the sufficiency of the evidence to support the verdicts. When called upon to review sufficiency questions, this Court will only examine the evidence most favorable to the State and all reasonable inferences to be drawn therefrom, in order to determine if there existed sufficient evidence of probative value to support the jury's verdict. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831. We will neither reweigh the evidence nor judge the credibility of the witnesses. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218.

■ Because there were no "identifiable fingerprints to link" him to the offenses and because an eyewitness could not positively identify him, defendant asserts that there was insufficient evidence to show that he was the assailant in the crimes charged. The record reveals that defendant's accomplices, Darryl McNeal and Anthony Grigsby, testified for the State. At the time of the robbery and shooting, McNeal was a short distance away and did not actually witness the events. He ran when he heard shots. When he later met Grigsby and defendant in a nearby alley, defendant stated that he had shot someone. Grigsby testified that he saw defendant grab the victim's purse. He too ran when shots were fired, but he confirmed that the defendant later said that he had shot "the woman." It is settled that an accused may be convicted upon the uncorroborated testimony of an accomplice. *E. g., Coleman v. State*, (1975) 264 Ind. 64, 339 N.E.2d 51.

■ Defendant next argues that there was insufficient evidence to establish that he possessed the requisite intent to commit robbery. We have previously stated: "Conviction for the crime of robbery \* \* \* requires proof only of general criminal intent and knowledge." *Roberts v. State*, (1977) 266 Ind. 72, 77, 360 N.E.2d 825, 828.

Here, there was evidence that the defendant and his accomplices planned to commit a robbery and went to the area where the crimes occurred for that purpose. Additional evidence revealed that he forced his way into the victim's car and then struggled with her over her purse. Because the criminal intent to commit a specific criminal act may be inferred from the voluntary

commission of the act, *McChristian v. State*, (1979) Ind., 396 N.E.2d 356, we believe there was ample evidence from which the jury could infer that the defendant intended to commit robbery.

■ Finally, defendant argues that there was insufficient evidence to show that he intended to commit murder. The evidence discloses that the victim, Shawn Grove, and a friend went to a neighborhood restaurant for a pizza. Upon returning to her car, Ms. Grove was accosted by a man who tried to snatch her purse. When she attempted to hold on to the purse, the assailant shot her in the abdomen. Ms. Grove then ran back toward the restaurant. According to the eyewitness, the man then held the gun in "both hands," "took aim," and shot Ms. Grove in the back.

Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death, *Chatman v. State*, (1975) 263 Ind. 531, 334 N.E.2d 673, and from the circumstances surrounding the killing, *McKinstry v. State*, (1975) 264 Ind. 29, 338 N.E.2d 636.

Defendant's allegation that the verdicts were contrary to law presupposed that the evidence was insufficient to support them. That issue having been resolved to the contrary, such allegation is without foundation.

### ISSUE III

■ Defendant next argues that he was denied a fair trial because the trial prosecutor "systematically and intentionally excluded" all prospective black jurors by the use of the State's peremptory challenges.

It is well settled that it is the defendant's duty to present a proper record to the appellate court. *E. g., Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323; *Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229; *Buchanan v. State*, (1975) 263 Ind. 360, 332 N.E.2d 213. This, the defendant has failed to do. The record here does not disclose either the race of the prospective jurors challenged by the State or the racial composition of the jury finally selected. Further, the record does not reveal whether defend-

ant raised the issue at the trial court level. We, thus, have nothing before us but defendant's bare assertion. "We can consider nothing that is not contained in the record." *Fair v. State*, (1977) 266 Ind. 380, 364 N.E.2d 1007.

We need not address this issue further, but we note that it has previously been decided contrary to defendant's position. *Swain v. Alabama*, (1965) 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, *reh. den.* 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442; *Roberts v. State*, (1978) Ind., 373 N.E.2d 1103; *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193, *cert. den.* 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100.

### ISSUE IV

■ Defendant asserts that the trial court erred when it unduly restricted his voir dire examination of prospective jurors. He argues that, because of a twenty minute time limitation, he had inadequate time to question one juror and no time to question an alternate juror.

The record provided by defendant contains only a superficial treatment of the voir dire examination conducted by the trial court, State, and defendant. The record does not reveal that a time limit was actually imposed, that the defendant objected to such a limitation, if imposed, or that he requested additional time. We are unable to determine from the record, whether or not the defendant was permitted to supplement his direct voir dire interrogation with questions submitted through the trial judge.

It is defendant's duty to present us with an adequate record. Error alleged but not disclosed by the record is not a proper subject for review. *See* Issue III.

■ We have encouraged trial judges to take a greater role in voir dire interrogation of prospective jurors, both in the interest of conserving judicial time and to thwart attempts to "brain-wash." *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409. In *Hart v. State*, (1976) 265 Ind. 145, 352 N.E.2d 712, we approved a procedure

whereby the trial judge conducted the interrogation *sua sponte* and from written questions submitted through the judge and then permitted each side a brief period (twenty minutes) in which to question the panel orally. In that opinion, we pointed out that in *White v. State,* (1975) 263 Ind. 302, 330 N.E.2d 84, we upheld the trial court's action in ·permitting the parties to supplement the court's questioning only by submitting written questions for the consideration of. the court, and said, "*A fortiori,* this trial court's rule limiting counsel to twenty minutes of oral questioning is not, on its face, and without more, an abuse of the court's discretion."

■ We endorse the procedure employed in the *Hart* case. Of necessity no hard and fast rule can be laid down to control the number of questions that can be submitted or the precise time permitted for oral interrogation by counsel. Due process requires a fair opportunity to discover existing grounds for challenge, both for cause and peremptorily, but no more. As in other such cases, the trial judge rightfully has broad discretion in determining when such requirement has been afforded. We will disturb that determination only upon a record clearly reflecting an abuse of that discretion.

### ISSUE V

■ Three photographs of the nude body of the victim were admitted into evidence over defendant's objections. On appeal, he asserts that the photographs were inadmissible because Indianapolis Police Detective Campbell, through whom they were introduced, was not present when they were taken.

Research reveals no Indiana case directly on point. The absence of authority in support of defendant's contention, however, may well suggest that it is so lacking in logic as not to have been previously urged. Courts in other jurisdictions have held that it is generally not necessary for a verifying witness to have been present at time the photograph was taken. *Strickland v. Davis,* (1930) 221 Ala. 247, 128 So. 233; *Higgins v.*

*Arizona Savings and Loan Association,* (1961) ·90 Ariz. 55, 365 P.2d 476; *Cagle Poultry and Egg Company v. Busick,* (1964) 110 Ga.App. 551, 139 S.E.2d 461; *Richardson v. Missouri-Kansas-Texas Railroad Company,* (Tex.Civ.App.1947) 205 S.W.2d 819. *See,* McCormick on Evidence § 214 at 531 (2d Ed. 1972).

The Illinois Court of Appeals has said, "The Witness need not be the photographer, nor need he know anything of the time or condition of the taking, but he must have personal knowledge of the scene or object in question and testify that it is correctly portrayed by the photograph." *Kooyumjian v. Stevens,* (1956) 10 Ill.App.2d 378, 135 · N.E.2d 146, 151. Defendant has argued that this is bad law, as it "opens the door to tampering, misconception, and inaccuracy, * * *." We do not agree. Photographs, like any other evidence, depend for their admissibility into evidence, upon relevance and competence. Usually the relevance of. a photographic exhibit is self-portraying. Its competence must depend upon a proper identification as an accurate representation of that which it purports to portray. The verity of the identification depends upon the knowledge of the witness making the identification. If the witness has first hand information of the scene portrayed, it is immaterial that he came by his knowledge at a time differing from that at which it was photographically recorded. If his knowledge is insufficient for such purpose or is not subject to cross-examination, he is not competent to make the identification. Otherwise he is. After having been admitted, photographic exhibits continue to rest upon the verity of the identification, and the weight and credibility of the identifying witness is a matter for jury assessment.

### ISSUE VI

■ Testimony elicited at trial disclosed that Indianapolis Police Sgt. Harry Dunn was present when Dr. John Eisele performed an autopsy on the body of Shawn Grove. Dr. Eisele removed a bullet therefrom, marked it, and gave it to Sgt. Dunn, who then placed it in a box and delivered it

to Officer Duncan of the Indianapolis Police Department Crime Laboratory. Officer Duncan gave it to Officer Koss who, along with Sgt. Charles Caine, ran ballistics tests thereon before placing it in the police property room.

At trial, Sgt. Dunn was shown a box containing four spent bullets and asked to identify the one that had been given to him by Dr. Eisele. He identified one of the bullets, and it was admitted into evidence as State's Exhibit 24. Later, Sgt. Caine testified that Exhibit 24 was not the bullet delivered to the crime lab, but instead was a bullet that he had test fired. The State moved to withdraw Exhibit 24, but that motion was overruled. Officer Koss was then asked to identify the bullet other than the one admitted as Exhibit 24. Much confusion ensued. When it became apparent that Sgt. Dunn had made an incorrect identification, the trial court expressed its belief that the mistake was "genuine" and directed the State to "start all over."

Sgt. Dunn was recalled as a witness. After examination with a magnifying glass, he identified another bullet as the one given to him by Dr. Eisele. Over defendant's objection, that bullet was then admitted into evidence as State's Exhibit 25. All subsequent witnesses who had handled the bullet recognized the markings and were able to identify Exhibit 25 as the bullet delivered to them from the autopsy.

On appeal, defendant argues that a proper chain of custody had not been established. He is correct in his assertion that the chain of custody rule requires that a foundation be laid showing continuous whereabouts of the evidence from the time it came into police possession. *Johnson v. State*, (1977) 267 Ind. 415, 370 N.E.2d 892. The purpose of the rule is to avoid claims of substitution, tampering, or mistake. *Wilson v. State*, (1975) 263 Ind. 469, 333 N.E.2d 755. Defendant argues only that "the present case definitely has the elements of mistake." Apparently, although it is not entirely clear, it is defendant's contention that Sgt. Dunn's mistaken identification, even though later corrected, tainted the

exhibit to such an extent as to render it inadmissible.

We cannot ignore that this exhibit could have been handled in a more orderly and professional manner. However, any inconsistencies in Sgt. Dunn's testimony went only to the weight to be given the exhibit and did not render it inadmissible. *See, Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229. Sgt. Dunn eventually made a correct identification and subsequent witnesses identified the exhibit as the bullet delivered to them from the autopsy and traced its whereabouts from the time it came into police possession. A sufficient chain of custody was thus established.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.