**Waymon HOOKS, Appellant,**

v.

.STATE of Indiana, Appellee.

No. 280S33.

Supreme Court of Indiana.

Sept. 24, 1980.

Richard M. Salb, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Waymon Hooks was charged in Marion Superior Court with murder under Ind.Code § 35–42–1–1 (Burns 1979 Repl.) as a result of the shooting death of his wife, Nellie Hooks. He was convicted after a jury trial. The trial court sentenced Hooks to forty years imprisonment. Appellant Hooks now attempts to raise four issues for our review on this appeal. However, contrary to the clear language of Ind. R.Tr.P. 59(D), Ind.R.App.P. 8.3(A)(7), and numerous cases from our courts, appellant failed to include three of these issues in his motion to correct errors. He has, therefore, waived any review of these alleged errors. *See, e. g., Guardiola v. State*, (1978) 268 Ind. 404, 405, 375 N.E.2d 1105, 1107; *Murphy v. State*, (1977) 267 Ind. 184, 187, 369 N.E.2d 411, 413; *Finch v. State*, (1975) 264 Ind. 48, 50–51, 338 N.E.2d 629, 630; *Spivey v. State*, (1971) 257 Ind. 257, 263, 274 N.E.2d 227, 230.

The sole remaining issue for our consideration concerns the sufficiency of the evidence. Appellant sought to establish at trial that he acted in self–defense. Under Ind.Code § 35–41–3–2 (Burns 1979 Repl.):

"[A] person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony."

*Cf.* Ind.Code § 35–41–3–2(a), (d) (Burns 1980 Supp.). Alternatively, he argued that he acted in sudden heat. Under Ind.Code § 35–42–1–3 (Burns 1979 Repl.), this sudden heat, if established, would operate as a mitigating factor and would reduce to voluntary manslaughter what would otherwise be murder.

On January 17, 1978, the decedent, Nellie Hooks, was working as a waitress in the Slo Poke Tavern in Indianapolis. At approximately 12:30 a. m., appellant Waymon Hooks, the decedent's husband, entered the tavern and approached his wife. Nellie Hooks had left her husband on the preceding New Year's Eve and had not returned home since that time. When she saw appellant enter the bar, she moved to the far end of the bar opposite the door, and said, "Oh my God, there he is! He's gonna kill me!" Appellant attempted to engage her in conversation. Apparently he was trying to persuade her to sign a transfer of title form for an automobile. The two talked for approximately five minutes about this and other financial matters. While they were arguing, the bartender, Earl Dennison, removed a pistol from a shelf behind the bar, placed it in his pocket, and sat with some patrons on the other side of the room.

Appellant Waymon Hooks left the tavern and returned a very short time later with three children. The oldest of these children was appellant's teenage son, David. After a brief verbal exchange, appellant and decedent Nellie Hooks began to scuffle, and appellant slapped her or knocked her up against a pole, causing her to hit her head and fall to the floor. Earl Dennison then stood up and approached appellant, telling him to take the children and leave the tavern. Another witness, James Droppeaux, got up and moved toward Nellie Hooks to assist her. Appellant Waymon Hooks and the children started toward the door. Appellant then produced a .38 caliber pistol which had been hidden in his son's pocket, turned, and shot Earl Dennison. The bullet struck Dennison above the heart and passed through his body. Appellant then walked over to where Nellie Hooks was hiding on the floor and shot her three times, the bullets striking her in the neck, leg, and abdomen.

Hooks then headed for the door, only to slip and fall, and, apparently by accident, shoot himself in the jaw. Appellant's son, David, grabbed the gun and warned others to stay away from his father. At this point, Earl Dennison fired a warning shot over David Hooks' head. David then took the other two children and left the tavern. Appellant Waymon Hooks was still lying on the tavern floor when police arrived. The autopsy of Nellie Hooks revealed that she died of the gunshot wound to her abdomen.

In examining a claim of insufficient evidence, this Court will neither reweigh the evidence nor judge the credibility of witnesses. To do so would usurp the jury's functions. We will determine only whether there is substantial evidence of probative value from which the jury could reasonably find the defendant guilty beyond a reasonable doubt. *Love v. State*, (1979) Ind., 393 N.E.2d 178, 180; *Pollard v. State* (1979) Ind., 388 N.E.2d 496, 501; *Ruetz v. State*, (1978) 268 Ind. 42, 49, 373 N.E.2d 152, 156.

In the case before us, appellant Waymon Hooks challenges much of the State's evidence and disputes the jury's conclusions. He acknowledges that he shot Nellie Hooks intentionally. However, he claims the evidence also shows that he was acting in self-defense when he did so. Alternatively, he claims he acted in the heat of passion and, therefore, is guilty of only voluntary manslaughter. Both of these defenses, of course, presented questions of fact for the jury to resolve. *See Harris v. State*, (1978) Ind., 382 N.E.2d 913; *Hester v. State*, (1978) 267 Ind. 697, 373 N.E.2d 141; *Robinson v. State*, (1962) 243 Ind. 192, 184 N.E.2d 16.

Appellant testified in his own defense. He stated that he pushed Nellie Hooks against the pole and caused her to fall only after she had struck him several times with her fists. Waymon Hooks testified further that the bartender, Earl Dennison, then told him to leave. He contends that he was struck from behind with a pool cue as he and the children were walking toward the door. He stated that he then grabbed the pistol from his son's pocket and turned back toward the bar room. When he turned around, he claims two or three men were advancing toward him, and that Dennison had a gun pointed at him. Appellant stated that he told Dennison to drop the gun, and says he shot Dennison when he became convinced that Dennison was going to shoot him. Appellant next testified that, after he shot Dennison, he heard two shots from behind him. When he turned toward the direction of the shots, the decedent, Nellie Hooks, was allegedly aiming a pistol at him and attempting to shoot him. Waymon Hooks testified that it was only then that he shot Nellie Hooks.

This version of the incident, of course, raised evidentiary conflicts for the jury to resolve. *Riggenbach v. State*, (1979) Ind., 397 N.E.2d 953. In doing so, they were free to disbelieve appellant's testimony. *Hill v. State*, (1979) Ind., 394 N.E.2d 132, 135; *Taggart v. State*, (1979) Ind., 390 N.E.2d 657, 659; *Johnson v. State*, (1978) 268 Ind. 55, 56–57, 373 N.E.2d 169, 170. Appellant admitted that he shot Nellie Hooks intentionally. During appellant's initial conversation with the decedent, shortly before the shooting, he approached a group of patrons at a nearby table and asked if someone would do him a favor and "blow [her] brains out." Appellant claimed he was angry with Nellie Hooks because there was allegedly no food at home for the children and because she had taken most of the money out of their joint checking account. Their financial woes had existed for some time, however, and the jury could reasonably have found that this was not adequate provocation, that a sufficient "cooling off" period had passed, and, therefore, that appellant was not acting in a sudden heat when he shot his wife. It is undisputed that appellant knew before entering the tavern that his son was carrying a loaded pistol. This fact tends to rebut appellant's "sudden heat" theory, and is evidence from which the jury could have concluded that appellant placed the gun there and planned the shooting. *See Downs v. State*, (1977) 267 Ind. 342, 369 N.E.2d 1079. *Cf. Hardin v. State*, (1980) Ind., 404 N.E.2d 1354.

While David Hooks substantially corroborated his father's account of the shooting, several other witnesses directly disputed this version. Several witnesses testified that appellant was not acting in self–defense, and that he formed the intent to kill after Dennison told him to leave and as he was approaching the door, if not before. *See Hemphill v. State,* (1979) Ind., 387 N.E.2d 1324; *Harris v. State, supra; Johnson v. State, supra. See also Chambers v. State,* (1979) Ind., 392 N.E.2d 1156; *Bradberry v. State,* (1977) 266 Ind. 530, 364 N.E.2d 1183. We believe there is substantial evidence of probative value to support the jury's rejection of appellant's defenses and its finding beyond a reasonable doubt that appellant Hooks knowingly or intentionally killed Nellie Hooks.

The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result.