Don MARTIN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1-1280A347.

Court of Appeals of Indiana,
First District.

April 21, 1981.

James H. Voyles, Ober, Symmes, Card-well, Voyles and Zahn, Indianapolis, for defendant-appellant. ·

Linley E. Pearson, Atty. Gen., Richard A. Alford, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Don Martin (Martin) appeals his conviction of bribery [1] entered in the Harrison Circuit Court upon a jury verdict.

We affirm.

1. Ind.Code 35–44–1–1(a)(2) (Supp.1978).

## ISSUES

Martin presents nine issues for review which, in his brief, he has condensed into three arguments. We will address those arguments which may be stated as follows:

I.   Whether the trial court committed error in overruling Martin's objection to setting a trial date beyond the one year limitation provided by Ind. Rules of Procedure, Criminal Rule 4(C);

II.  Whether the trial court committed reversible error in the admission of State's Exhibit No. 1 containing hearsay evidence;

III. Sufficiency of the evidence.

## DISCUSSION AND DECISION

*Issue I.   Discharge for delay under C.R. 4(C)*

Indiana Rules of Procedure, Criminal Rule 4(C) provides:

"(C) Defendant discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, *on motion*, be discharged." (Emphasis added.)

The record discloses that the information was filed on March 6, 1979, and a warrant was issued on that date. No return of the warrant, nor any other statement of Martin's subsequent arrest exists in the record. We, therefore, are unable to determine when Martin was arrested, a necessary element in the commencement of the running

of the one year limitation for bringing a defendant to trial. Martin's attorney filed an appearance on March 26, 1979, and the record shows that he moved for and was granted an indefinite continuance. The record does not disclose that a trial setting was made on March 26, 1979. Also, no arraignment or plea was entered, on record, at that time or ever. Further, we are unable to resolve from what action or proceeding the continuance was granted. Nothing further occurred in the case until February 1, 1980, when the trial court, upon motion by the State, set the cause for trial on February 28, 1980. On March 18, 1980, the State filed a motion to set the trial for a date certain. Then, on March 19, 1980, the trial court set a new trial date for June 10, 1980. However, the record is silent as to what happened to the February 28 trial date. On March 25, 1980, Martin filed an objection to the June 10, 1980, trial setting, which omitting heading and signature, reads as follows:

"Objection to Trial Date

Comes now defendant by attorney, and shows the court that on March 19, 1980 a trial in the above entitled cause of action was set for June 10, 1980. Defendant further shows the court that the date is outside of the time limit, in which the State of Indiana must try the defendant in accordance with Indiana Rules of Procedure, Criminal Rule 4.

Wherefore defendant enters this objection to any trial date that is set, which is outside the time limit allowed by Trial Rule 4 and specifically objects to the order of March 19, 1980, which set this cause for trial on June 10, 1980."

The objection was overruled after an oral argument; however, no record exists of that argument. No further mention is made of the matter in the transcript until the motion to correct errors. *No motion for discharge was ever filed* by defendant Martin.

■ There are numerous cases construing C.R. 4 and its predecessors. The burden is upon the State to bring a defendant to trial within one year, and C.R. 4(C) relieves

the State from that duty only for a delay caused by the defendant's own act, or a continuance had on the defendant's own motion. *Wilson v. State*, (1977) 172 Ind. App. 696, 361 N.E.2d 931. This duty is an affirmative one which rests upon the State; the defendant has no obligation to remind the court of its duty. *Simpson v. State*, (1975) 165 Ind.App. 285, 332 N.E.2d 112. When delay is chargeable to the defendant the period fixed by the rule is extended only by the period of that delay. *Simpson, supra*. When a defendant learns within the period provided by the rule that the case is set for trial at a time beyond the date permitted, and the defendant makes no objection, he will be deemed to have waived the error. *Arch v. State*, (1978) 269 Ind. 450, 381 N.E.2d 465; *Wilson supra; Bryant v. State*, (1973) 261 Ind. 172, 301 N.E.2d 179. Objection to such trial setting must be made at the earliest opportunity so that the trial court can reset the trial for a date within the proper period. *State ex rel. Wernke v. Superior Court of Hendricks County*, (1976) 264 Ind. 646, 348 N.E.2d 644; *State v. Rehborg*, (1979) Ind.App., 396 N.E.2d 953; *State v. Laslie*, (1978) Ind.App., 381 N.E.2d 529; *Tyner v. State*, (1975) 166 Ind.App. 45, 333 N.E.2d 857.

Martin and the State both devote much argument to the delay caused by Martin's continuance, granted on March 26, 1979. The State contends that Martin is chargeable with the delay from March 26, 1979, to February 1, 1980. Martin argues that since the record does not disclose a *written* motion for continuance as required by Ind. Rules of Procedure, Trial Rule 7, he is not chargeable with any delay, and, therefore, was entitled to a discharge at the end of one year beginning from March 6, 1979, or March 26, 1979. The condition of the record renders a definitive opinion impossible on the subject of delay. However, it is not necessary.

■ Attention is directed to the last line of C.R. 4(C) which provides that "[a]ny defendant so held shall, *on motion*, be discharged." (Emphasis added.) The motion contemplated by C.R. 4(C) is not the same

instrument, nor does it perform the same function as the *objection* to the trial setting contemplated in *Wilson, supra.* The purpose of requiring the defendant to make an objection to a trial date set beyond the one year limitation was stated in *Utterback v. State,* (1974) 261 Ind. 685, 310 N.E.2d 552:

> "[W]hen a ruling is made that is incorrect, and the offended party is aware of it, or reasonably should be presumed to be aware of it, it is his obligation to call it to the court's attention in time to permit a correction."

261 Ind. at 687, 310 N.E.2d 552. A motion for discharge under C.R. 4(C) must, by necessity, be filed at a time later than the filing of the objection and after the one year has run and the defendant has still not been brought to trial. If it is filed prior to the running of the year it is premature. *State ex rel. Garvin v. Dearborn Circuit Court,* (1972) 257 Ind. 631, 277 N.E.2d 370. Under prior law, it is generally held that the right to discharge for delay in bringing a defendant to trial is waived if the proper motion is not made before the trial begins. *Durrett v. State,* (1966) 247 Ind. 692, 219 N.E.2d 814, *cert. den.* 386 U.S. 1024, 87 S.Ct. 1383, 18 L.Ed.2d 465; *Randolph v. State,* (1954) 234 Ind. 57, 122 N.E.2d 860, *cert. den.* 350 U.S. 889, 76 S.Ct. 145, 100 L.Ed. 783. The bare language of C.R. 4(C) requires the defendant to file a motion with the trial court in order to be discharged for failing to receive a prompt trial. The burden is upon the defendant to show the trial court that the State has failed to timely bring him to trial and the defendant was not responsible for such delay. C.R. 4(C) is *not* a self-executing rule. Pursuant to the rule and as a prerequisite for discharge, the defendant *must* properly motion for discharge. Judge Sullivan, in *Mayes v. State,* (1974) 162 Ind. App. 186, 318 N.E.2d 811, stated:

> "Mayes, however, has not framed his contention strictly in terms of the discharge provision of Rule CR. 4, but rather upon the premise that the failure to prosecute within the time limits set forth therein, serve to divest the trial court of jurisdiction. We reject this 'jurisdictional' argument in the light of *In re Brooks*

(1966), 247 Ind. 249, 214 N.E.2d 653 and *Randolph v. State,* (1954), 234 Ind. 57, 122 N.E.2d 860, *cert. denied,* 350 U.S. 889, 76 S.Ct. 145, 100 L.Ed. 783 (1955), which specifically held, in construing Ind.Ann. Stat. § 9–1402–1404 (the predecessors of Rule CR. 4), *that a failure to make a timely motion for discharge prior to trial constitutes a waiver of the right to discharge* and that under such circumstances, the jurisdiction of the criminal court is not affected." (Emphasis added.)

162 Ind.App. at 190–191, 318 N.E.2d 811. In accord with our position is the Supreme Court of the United States, which, in *United States v. Little,* (8th Cir. 1977) 567 F.2d 346, *cert. den.* 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60, *reh. den.* 438 U.S. 909, 98 S.Ct. 3131, 57 L.Ed.2d 1153, denied certiorari affirming the United States Court of Appeals, Eighth Circuit. Circuit Judge Bright, writing for a unanimous court, stated:

> "*Because Little failed to move for dismissal prior to trial, he waived any right to the sanction of dismissal under the Speedy Trial Act.* See 18 U.S.C. § 3162(a)(2)(Supp. V 1975). We also find that he waived his sixth amendment right to a speedy trial. While the record is somewhat confused, it does indicate that both he and Vaughn expressly waived their right to a speedy trial while the case remained pending in Texas. Subsequent to the transfer to the Western District of Arkansas, both Little and Vaughn sought and were granted a continuance. They then sought another continuance just prior to the beginning of their trial, which was denied." (Emphasis added.)

567 F.2d at 349.

██ Here, Martin has never filed a motion for discharge. We therefore hold he has waived any right to a speedy trial that he may have had. We do not believe our holding is unduly technical. Furthermore, it should be noted that a proper motion, and a hearing thereon *of record* could have developed many facts to aid our determination of this question as follows: (1) the exact time of Martin's arrest, thus commencing the one year limitation to run, (2)

the nature of the proceeding upon which defendant's motion for a continuance was granted on March 26, 1979, (3) the length of time granted the defendant on his continuance, (4) whether a delay not chargeable to Martin truly resulted, (5) the reason for vacation of the February 28, 1980, trial date, and (6) what party was properly chargeable for that delay.

In sum, a proper motion for discharge not only is clearly mandated by C.R. 4(C), but also makes for good practice which, more importantly, would provide this court with a record of the relevant procedural time sequences, i. e. time of defendant's arrest, arraignment, subsequent motions, and trial setting.

*Issue II. State's Exhibit No. 1, hearsay*

The witness, Lola Hammond, was called first by the State. She had previously been the wife of one Sammy Coffman. After a bitter divorce proceeding, Lola Hammond had written a letter to officials in the Department of Natural Resources informing of Coffmans' and Martin's unauthorized activities. In his case in chief Martin also called Lola Hammond as a witness. Upon cross-examination she identified the accusatory letter which contained the following sentence: "There was also a ranger involved who is no longer a Forest Ranger." Martin objected to the letter being admitted into evidence because it was hearsay. Lola Hammond admitted she had no personal knowledge of a ranger's participation, but that her sole source of knowledge came personally from the Coffmans. The court overruled defendant's objection, and the letter, as State's Exhibit No. 1, was admitted into evidence. Martin claims this was reversible error.

Charles and Sammy Coffman testified for the State; and their testimony revealed that they illegally had cut and sold 170 trees from state forests. These same trees were purchased pursuant to an agreement involving the complicity of Martin with Coffmans. For his part in the deal, Martin received approximately $6,000.

■ Conceding that the evidence was hearsay, it is harmless, as being cumulative of other similar evidence which had been properly admitted. *Cooper v. State,* (1974) 261 Ind. 659, 309 N.E.2d 807; 2 I.L.E. Appeals § 620.

*Issue III. Sufficiency of the evidence*

Lastly, Martin argues that the verdict is not supported by sufficient evidence as to all the elements of bribery. We remind Martin of our standard of review. When reviewing the sufficiency of the evidence this court considers only the evidence most favorable to support the verdict, together with all reasonable inferences to be drawn therefrom. If substantial evidence exists of probative value to support each element of the offense, the judgment will be affirmed. *Moore v. State,* (1978) 268 Ind. 519, 376 N.E.2d 1129.

The evidence most favorable to support the judgment discloses that Martin was a forester employed by the Indiana Department of Natural Resources, Division of Forestry. He had duties and responsibilities in the management of the Harrison-Crawford State Forest. Among his duties was the sale and harvesting of timber. Charles and Sammy Coffman in concert with Martin illegally cut and sold about 170 timber trees from the state forest. The money was divided between Coffmans and Martin; Martin was paid cash for his share in the amount of approximately $6,000. The proper procedure for the sale of the timber would have been by public bidding whereby the sale money is placed in an account available only to department officials. Martin's excuse to Coffmans for this unusual sale procedure was that the money would be used to purchase a backhoe for the benefit of state park activities. Coffmans did not believe that story. Martin denied the above evidence totally.

Martin was charged under Ind.Code 35–44–1–1(a)(2) (Supp.1978) which provides:

"(a) A person who:

* * * * * *

(2) being a public servant, solicits, accepts, or agrees to accept, either before or after he becomes appointed, elected, or

qualified, any property, except property he is authorized by law to accept, with intent to control the performance of an act related to his employment or function as a public servant;

\*    \*    \*    \*    \*    \*

Commits bribery, a Class C felony."

Ind.Code 35–41–1–2 (Supp.1978) defines the term public servant as a person who:

"(1) is authorized to perform an official function on behalf of, or is paid by, a governmental entity; or

(2) is elected or appointed to office to discharge a public duty for a governmental entity."

A governmental entity is:

"(1) ... any state ...

(2) any authority, board, bureau, commission, committee, department ... of any of those entities[.]"

■ Martin first contends that the only evidence to connect him to the offense was the testimony of co-conspirators or admitted thieves. It is a rule that the uncorroborated testimony of an accomplice will support a conviction. *Moore, supra.*

Martin next contends that the acts of bribery did not involve Martin in his official capacity. Such an argument is specious. His employment involved the protection of state forests from such timber poaching.

Martin lastly contends that the State's testimony merely showed the money Martin accepted was for a backhoe for the use and benefit of the state parks, and thus the State of Indiana. Since the evidence does not show that the money was to benefit Martin personally he should not be found guilty. We are of the opinion that the jury was not compelled to accept that explanation of Martin's altruistic motives as true, but rather were free to believe that such a statement was merely a cloak and sham to allay any suspicion of his illegal activity.

■ In summary, the evidence discloses that Martin was (1) a public servant who (2) accepted money (3) to permit unauthorized harvesting of timber (4) when he was charged with the protection of that timber. We are of the opinion that the evidence is sufficient.

For the above stated reasons, this cause is affirmed.

Affirmed.

ROBERTSON and RATLIFF, JJ., concur.