**James Frank DUNN, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 681S166.**

Supreme Court of Indiana.

Aug. 27, 1982.

Mark H. Holtan, Munster, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and sentenced to thirty (30) years imprisonment. This direct appeal presents the following issues:

(1) Whether the evidence is sufficient to support the conviction.

(2) Whether the trial court erred in not holding an evidentiary hearing to determine if the misconduct of a juror prejudiced Defendant's right to a fair trial.

\* \* \*

## ISSUE I

Defendant challenges the sufficiency of the evidence to support the conviction.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, the verdict will not be disturbed, (citation omitted). In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses, (citation omitted)."

*Loyd v. State*, (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied*, (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant contends that the evidence supports only a conviction for Voluntary Manslaughter. He asserts that when he killed the victim he was acting under sudden heat. Ind.Code § 35–42–1–3(b) (Burns 1979). However, his argument ignores the evidence favorable to the verdict.

On the evening of June 22, 1980 Defendant and several other persons were present near a shade tree in front of 1643 Delaware Street in Gary. The spot is a local gathering place in the neighborhood. The victim, who arrived shortly after Defendant, was acquainted with Defendant. Witnesses testified that the victim was intoxicated and that she was a known alcoholic, who spoke in a loud, boisterous fashion when she drank. A discussion ensued between Defendant and the victim, which became a heated argument. Profanities were exchanged, and the following occurred:

"A. I walked up to her and then she come up to me and she said you heard what I said and she was spitting in my face and you could smell the alcohol on her and she said you're just like your black ass mammy and that is when I lost my head I guess, the only thing I remember is reaching to get my gun and shooting her. How many times I don't know, all I know is I shot her." (R. at 345–46)

(Direct examination of Defendant).

Several eyewitnesses described the event of the shooting.

Witness Butler was approximately fifty (50) feet from the scene:

"Q. Did she threaten him during the argument?

"A. No.

"Q. She said what at the end?

"A. You are just like your mother, ornery.

"Q. What happened then or what was said next?

"A. He said, this is it.

"Q. That is all he said?

"A. No, he pulled out a gun and shot her twice in the front.

"Q. What happened then?

"A. She fell on the front.

"Q. What did Mr. Dunn do next?

"A. He went to walk away, then he shot her three (3) times in the back.

"Q. You say he went to walk away. Did he actually leave where he was standing.

"A. Yes, he made a move or step or two.

"Q. Did he come back?

"A. Yes." (R. at 126–27).

Witness Bryant, who was five or six feet from the scene, testified that Defendant and the victim argued about a matter that he had heard them argue about before. He observed Defendant shoot the victim five times, twice in the front, and three times in the back. He was not sure if Defendant moved between the two sets of gun shots.

Witness Walker testified that the argument was loud and that both Defendant and the victim actively participated in the dispute. Walker heard two shots, and "looked around" to see Defendant shoot the victim three more times:

"Q. Did Mr. Dunn move or say anything during the time that he was shooting her?

"A. He didn't say anything during the time he was shooting her. I just saw the last three shots and as he passed her brother and myself he said when the police come I will be at home." (R. at 177–78).

Witness Moore provided a similar description of the event:

"Q. What happened at the end of the argument?

"A. Like I said they both was arguing, just all of a sudden I heard James Dunn said, 'You done said the wrong thing now,' and I believe he take his left hand and reached and got his pistol and walked up on the sidewalk where she were and if I am not mistaken put it right here somewhere and shot twice and she made a little rock like, and when she was come back she went to fall and he stepped out of the way and she hit the ground and he walked in the other direction that he usually walk when he is going home. He walked about three or four or five steps and then he turned around and came back and shot her in the back three more times." (R. at 262–63).

Moore stated that the victim, who appeared to be unarmed, threatened to blow Defendant's brains out if he tried to convince the authorities to take her son away from her.

▆▆▆ Whether or not Defendant acted under sudden heat was a question for the jury to resolve. *Hulen v. State*, (1980) Ind., 413 N.E.2d 907, 908–09; *Hooks v. State*, (1980) Ind., 409 N.E.2d 618, 620; *McFarland v. State*, (1979) Ind., 390 N.E.2d 989, 995. The above evidence allowed the jury to find that Defendant engaged in an argument with the victim, and then without provocation which the eyewitnesses could discern, he shot the victim twice, turned to leave but decided to finish the job, then shot her three more times, *Johnson v. State*, (1980) Ind., 409 N.E.2d 621, 623; *McFarland v. State, supra* at 991, and calmly went home. From the evidence the jury could find that when Defendant killed the victim he was not acting under such anger, rage, sudden resentment, or terror that obscured his reasoning capacity and rendered him incapable of cool reflection. *Hulen v. State, supra; Johnson v. State, supra; McFarland v. State, supra.*

### ISSUE II

▆▆▆ Defendant suffers from epilepsy. During voir dire examination of the jury, the transcript of which is not included in the record, defense counsel allegedly asked prospective jurors if they had epilepsy or had any experience with the condition. Defendant further alleges that no juror answered the question in the affirmative and that after the trial, defense counsel learned from the Deputy Prosecutor that one of the jurors did suffer from epilepsy. Defendant contends that the false answer of the juror precluded him from challenging the juror for cause pursuant to Ind.Code § 35–1–30–4(11) (Burns 1979):

"The following are good causes for challenge to any person called as a juror in any criminal trial:

(11) That he is biased or prejudiced for or against the defendant."

Without intimating any opinion on the validity of such a challenge we note that the only record of the voir dire examination is a minute that the jurors and alternates were chosen. Defendant's claims that defense counsel asked about epilepsy, that the jurors were silent in response to the question, and that defense counsel learned of a juror's epilepsy after the trial are supported only by an affidavit made by defense counsel and attached to the Motion to Correct Errors. This Court will not determine what occurred at trial based on statements contained in a motion. *Morse v. State*, (1980) Ind., 413 N.E.2d 885, 886. The record contains no transcript of any hearing upon a post trial motion, even though a hearing on the Motion to Correct Errors was set for March 23, 1981, the date the trial court denied the Motion. Defendant has not presented us with an evidentiary record which supports his allegation of error. *E.g., Alleyn v. State*, (1981) Ind., 427 N.E.2d 1095, 1097–98; *Hall v. State*, (1980) Ind., 405 N.E.2d 530, 533; *Johnson v. State*, (1980) Ind., 399 N.E.2d 360, 362; *Mendez v. State*, (1977) 267 Ind. 309, 311, 370 N.E.2d 323, 325; *Pulliam v. State*, (1976) 264 Ind. 381, 391, 345 N.E.2d 229, 238.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., concurs in result with opinion.

HUNTER, Justice, concurring in result.

I respectfully concur in the result reached by the majority, but am compelled to state my rationale for joining its disposition of Issue II.

Effective January 1, 1982, Ind.R.Ap.P. 7.2(C) was amended to read:

"Incompleteness or inadequacy of the record shall not constitute a ground for dismissal of the appeal or preclude review on the merits."

Concomitantly, Ind.R.Ap.P. 7.2(B) now reads:

"Parts which are not transmitted to the court on appeal shall nevertheless be a

part of the record on appeal for all purposes."

These amendments to subsections "B" and "C" of Ind.R.Ap.P. 7.2 preclude the automatic waiver of an appellant's claim of error heretofore triggered by virtue of the failure to *include* portions of the record necessary to appellate review. *See, e.g., Hall v. State,* (1980) Ind., 405 N.E.2d 530; *Mendez v. State,* (1977) 267 Ind. 309, 370 N.E.2d 323. Where the record has been *established* in the trial court but not *included* in the record presented for review, this Court must now issue a writ of certiorari to the trial court to obtain the missing portions. For instance, in *McNeal v. State,* (1982) Ind.App., 434 N.E.2d 127, the Court of Appeals issued a writ to obtain exhibits which had been admitted at trial but had not been included in the record presented on appeal.

The majority's opinion is phrased in terms such as "the transcript of which [voir dire] is not included in the record" and "the record contains no transcript of any hearing upon a post trial motion . . . ." In its literal sense, this language transcends the letter and spirit of amended rule Ind.R.Ap.P. 7.2(B) and (C).

Nonetheless, the majority's ultimate disposition is justified for the reason that it appears from the record that during voir dire, the court reporter was excused with the consent of both parties. Similarly, there is no indication that an evidentiary hearing was held on defendant's motion to correct errors. In fact, defendant requests the opportunity to present evidence pertinent to Issue II as part of the relief he seeks in his appellate brief.

Consequently, defendant has waived his claim of error by virtue of his failure to *establish* a proper record in the trial court. For that reason, the majority's resolution of Issue II is correct.

I concur in result.