Lester Clark HINDS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 4–783A230.

Court of Appeals of Indiana, Fourth District.

Oct. 10, 1984.

Rehearing Denied Nov. 30, 1984.

Mark A. Ryan, Tippecanoe County Public Defender, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

A jury found Lester Clark Hinds guilty of robbery with a deadly weapon, a Class B felony under IND.CODE 35–42–5–1 (1982). He appeals, raising the following issues:

1. Whether there was sufficient evidence to support Hinds' conviction;
2. Whether the trial court erred in denying Hinds' motion for discharge under Criminal Rule 4(C);
3. Whether the trial court improperly limited voir dire of a prospective juror;
4. Whether unduly suggestive identification procedures before trial tainted the identification testimony of two state witnesses;
5. Whether the trial court erred in admitting a speculative in-court identification of Hinds by another state witness;
6. Whether the trial court erred in excluding evidence of other similar robberies, tendered to prove the robbery at issue was committed by someone other than Hinds; and
7. Whether the trial court erred in rejecting two instructions tendered by Hinds.

We affirm.

## I.

■ In assessing the sufficiency of the evidence, we neither weigh the evidence nor judge credibility. We consider only the evidence most favorable to the state with all reasonable inferences therefrom, and we will affirm if there is substantial evidence on each element from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *Harris v. State,* (1981) Ind., 425 N.E.2d 112. Hinds' robbery conviction was based on IC 35–42–5–1 (1982):

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person;
>
> .        .        .        .        .
>
> commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon . . . .

The evidence at trial revealed the following facts. On the night of December 11, 1980, a man entered the Village Bottle Shop Liquor Store in West Lafayette, Indiana. The man was dressed in heavy coveralls and wore sunglasses, a bandanna, and a stocking cap. He walked into a room where wine was displayed, then came out with a gun in his hand and the bandanna pulled up over his face. He ordered everyone present—the store's manager, two employees, and a customer—to lie face down on the floor or he would blow their heads off. The man then walked to the cash registers, where the employees heard him take money from the drawers. The man fled, and when the store's employees got up and checked the cash register, they found that money had been taken. At trial, the two employees identified the defendant, Lester Hinds, as the man who robbed the store.

■ This evidence is abundantly sufficient to prove that Hinds entered the liquor store on the night in question and threatened to kill those present with a pistol—plainly a deadly weapon under IC 35–42–5–1. Hinds argues, however, that there was insufficient evidence to prove he "took property from another person or from the presence of another person." *Id.* We disagree. Although no one saw Hinds remove money from the store's cash registers, one employee said he heard Hinds do so. Fur-

ther, the store's manager and both employees testified that money was missing from the cash registers when Hinds left the store. From this evidence the jury could reasonably infer beyond a reasonable doubt that Hinds took money from the store by threatening the use of force. There was sufficient evidence to support Hinds' conviction.

## II.

Hinds next contends the court erred in denying his motion for discharge under Ind.Rules of Procedure, Criminal Rule 4(C), which requires that persons charged with and arrested for a crime be tried within one year. In reviewing this claim, we must first determine when the one-year period began to run. The record shows that an information was initially filed against Hinds in the Tippecanoe County Court on December 30, 1980, and that, on the same day, he was served with an arrest warrant in the Montgomery County jail, where he was being held on unrelated charges. On July 22, 1981, a new information charging the same robbery was filed in the Tippecanoe Circuit Court. This transfer to the Circuit Court was necessary because the County Court, in which the charge had been pending, had no jurisdiction to try Class B felony cases.[1]

Based on these facts the state contends the one-year period set by C.R. 4(C) did not begin until July 22, 1982, when an information was finally filed in a court having jurisdiction to try Class B felonies. The state relies upon the decisions in *State ex rel. Wickliffe v. Judge of the Criminal Court*, (1975) 263 Ind. 219, 328 N.E.2d 420, and *Banks v. State*, (1980) 273 Ind. 99, 402 N.E.2d 1213. In both cases, defendants preliminarily charged in the municipal court with murder sought discharge under C.R. 4(B) after the state failed to try them within 70 days of their speedy trial motions. In each case, the supreme court held the defendant was not entitled to discharge. The rationale of these cases was

that, because the municipal court had no jurisdiction to try the defendant on a murder charge, a motion under C.R. 4(B) requesting it to do so was a "nullity" and thus was ineffective to trigger the 70-day limit set by C.R. 4(B). *State ex rel. Wickliffe, supra,* 263 Ind. at 222, 328 N.E.2d at 422.

▪ This case, however, is distinguishable from *State ex rel. Wickliffe* and *Banks* in that Hinds' motion for discharge was based not on C.R. 4(B) but on C.R. 4(C). If Hinds had requested that the County Court try him within 70 days, an act beyond that court's jurisdiction, his motion would have been a nullity. The one-year limit set by C.R. 4(C), however, is not initiated by a motion, but rather by the filing of charges against a defendant and his arrest. C.R. 4(C). The decisions in *Banks* and *State ex rel. Wickliffe, supra,* clearly do not mean that informations filed in county courts or arrest warrants issued by such courts are "nullities." Rather, such preliminary informations and arrest warrants are indisputably valid and thus effective to trigger the one-year period set in C.R. 4(C). We accordingly find that the one-year period within which the state was required to try Hinds began, not when his case was transferred to the Circuit Court, but when he was arrested and charged with robbery in the County Court.

▪ This brings us to the question of when Hinds was "arrested" for purposes of C.R. 4(C). Hinds argues he was arrested on December 30, 1980, when a sheriff served the arrest warrant on him in the Montgomery County jail, where he was being held on unrelated charges. The state contends Hinds was not arrested until February 2, 1981, when the Tippecanoe County Court ordered the sheriff to return him to Tippecanoe County for a line-up. Faced with identical facts, our supreme court has held that "arrest" within the meaning of C.R. 4(C) occurs not when the arrest warrant was served but when the defendant

---

1. IND.CODE 33–10.5–3–1 (Supp.1984). The County Court did, however, have jurisdiction "to conduct preliminary hearings in felony cases." I.C. 33–10.5–3–2 (1982).

was ordered returned by the court in which the charges were pending. *Landrum v. State*, (1981) Ind., 428 N.E.2d 1228. Thus Hinds was not arrested, and the one-year limit set by C.R. 4(C) did not begin to run, until February 2, 1981, when the Tippecanoe County Court first ordered his return.

█ The record shows Hinds filed his motion for discharge more than one year after his arrest. As the state points out, however, the time within which it was required to try Hinds was extended by any delays caused by Hinds. C.R. 4(C); *Martin v. State*, (1981) Ind.App., 419 N.E.2d 256. The trial on this charge was initially set for September 22, 1981. By agreement between Hinds and the state, however, trial was reset for January 5, 1982. This delay, totalling 105 days, was attributable to Hinds. *State v. Tomes*, (1984) Ind.App., 466 N.E.2d 66.

█ The state further seeks to charge Hinds with delays resulting from his motion for severance under IND.CODE 35–34–1–11 (1982). Hinds was originally charged, in a two-count information, with both the robbery at issue here and another robbery in Lafayette. Not wishing to defend against both of these counts in one trial, Hinds moved on December 23, 1981, to have them severed. The trial court granted this motion, and the state chose to try the other robbery count on the January 5 trial date set previously. On December 29, 1981, Hinds asked for, and was granted, a continuance of this trial date to April 20, 1982.

The state contends the delay caused by this continuance extended the C.R. 4(C) time limit for trying the charges at issue here. We disagree. Given that the instant charges were not to be litigated on the January 5 trial date, Hinds' continuance of that trial on the severed charges did not in any way delay his trial on the present charges. When the court grants a defendant's motion to sever two counts that have been joined for trial, the state may not thwart the defendant's speedy trial right by holding one count in abeyance until the other count has been disposed of. Rather, upon severance, it is the state's duty to pursue both of the severed counts so as to bring them to trial within the time limits set by C.R. 4. We accordingly hold that Hinds' continuance of the severed count did not cause any delay chargeable against him here.

█ We conclude that only 105 days of delay are chargeable to Hinds. This delay extended the time for trial under C.R. 4(C) to May 17, 1982. If the state had made no effort to try Hinds before this date, he would have been entitled to discharge. The record shows, however, that the state asked the court on April 20 to set this case for trial. At that time, Hinds and the state agreed to a trial on June 22, 1982. On June 7, 1982, the court ordered the case transferred to the Tippecanoe Superior Court to expedite its disposition. In the meantime, Hinds moved to depose three state witnesses, finally filing these depositions on Friday, June 18, 1982. On Monday, June 21, the state asked the Superior Court to set the case for trial. Hinds objected to any trial date being set on the grounds that he was entitled to discharge under C.R. 4. As a result, no trial date was set when Hinds filed his written motion for discharge on June 24.

On these facts, we find that Hinds agreed to a trial date beyond the period set by C.R. 4(C) at a time when, had he objected, the court could still have set the case for trial within the one-year limit. Then, by his delay in deposing the state's witnesses and by objecting when the state sought to set the case for trial in a less congested court, Hinds prevented the state from trying him on the agreed-upon date, or any date prior to Hinds' motion for discharge. By so doing, Hinds waived any objection to the state's failure to try him before June 24. *Martin v. State, supra; Wilson v. State*, (1977) 172 Ind.App. 696, 361 N.E.2d 931. The trial court did not err in denying Hinds' motion for discharge under C.R. 4(C).

### III.

█ Hinds next contends the trial court erroneously limited his voir dire of

Thomas Burns, a prospective juror, who was acquainted with the grandfather of one of the victims. After Burns disclosed a limited social relationship with the victim's grandfather, the court asked him whether he could be fair and impartial despite this relationship. Burns said he could. The trial court then prohibited Hinds from questioning Burns further about this relationship. Hinds argues the court abused its discretion in doing so. We disagree. Voir dire is meant to enable the parties to discover grounds for challenging prospective jurors, both peremptorily and for cause. *Johnson v. State*, (1980) 272 Ind. 427, 399 N.E.2d 360. The trial court, however, has broad discretion in determining the extent to which parties may question prospective jurors to discover such grounds. *Id.; Mahoney v. State*, (1979) 180 Ind.App. 358, 388 N.E.2d 591. In this case, the prospective juror indicated only a distant connection with the state's witness. Further, he stated that this relationship would not prevent him from being fair and impartial. It seems improbable that further questions about this relationship would have disclosed any grounds for challenging Burns. We accordingly find the trial court did not abuse its discretion by prohibiting further questions about this relationship.

### IV.

Not long after the robbery, the police prepared an array of seven photographs of young white men, including Hinds, and showed it to the liquor store's two employees, Brandon Brooks and Jerry Webber. Brooks and Webber both selected Hinds' photo as depicting the man who robbed them. Later, both Brooks and Webber identified Hinds at a line-up. Hinds argues the photographic array and physical line-up were done in an unduly suggestive manner. Thus, he argues the court erred in admitting evidence of these pre-trial identifications and in allowing Brooks and Webber to identify him at trial.

■ Due process forbids the use of pre-trial identification procedures so impermissibly suggestive as to create a substantial likelihood of misidentification. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363. The likelihood of misidentification depends on several factors, including the witnesses' opportunity to view the criminal when the crime was committed, their degree of attention at the time, the accuracy of their prior descriptions, their level of certainty in the pre-trial identification, and the length of time between the crime and the identification. *Neil v. Biggers*, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Fields v. State*, (1975) 263 Ind. 550, 333 N.E.2d 742.

■ In this case, both witnesses said they paid special attention to Hinds when he entered the liquor store because of his suspicious dress. Although he wore sunglasses and a stocking cap, they were both able to look at his face at close range, under good lighting, for about fifteen seconds before he pulled a bandanna over his face. Both Webber and Brooks testified their identification of Hinds before trial and at trial was based on their observations at the time of the robbery. In light of this independent basis for the witnesses' identification, the court was entitled to find no substantial likelihood that these witnesses misidentified Hinds. The trial court did not err in admitting this identification testimony.

### V.

■ Hinds argues next that the court erred in allowing one state witness to speculate as to Hinds' identity as the man who robbed the liquor store. This witness, Mark Lods, was the on-duty manager when the robbery occurred. During the state's case, he testified on direct examination about the robbery but did not identify Hinds as the robber. On cross-examination, Hinds' attorney elicited an admission that Lods could not positively identify Hinds. Then, on re-direct, Lods was allowed to testify over objection that it was "very possible" Hinds was the man who robbed the store. Hinds contends this answer was pure speculation and was thus inadmissable. This claim is without merit.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

This case, unlike those Hinds cites, does not involve a witness whose testimony was not based on facts within his personal knowledge. Lods, a witness of the robbery, was clearly competent to testify that Hinds was "possibly" the robber. Although testimony as to possibilities is of slim probative value, it is nevertheless admissible. *Noblesville Casting Division of TRW, Inc. v. Prince*, (1982) Ind., 438 N.E.2d 722; *Terre Haute First National Bank v. Stewart*, (1983) Ind.App., 455 N.E.2d 362. The trial court did not err in admitting this testimony.

## VI.

▆▆▆▆▆ Hinds next claims the trial court erred in excluding testimony from two defense witnesses concerning a robbery committed by an unidentified man after Hinds was arrested for the robbery at issue here. Hinds argues that the similar modus operandi used in both robberies indicates they were both committed by the unidentified perpetrator of the second robbery. Thus, Hinds concludes, testimony about the second robbery was relevant to prove his innocence and should have been admitted.

Evidence is relevant if it has any tendency to prove or disprove a material fact. *Badelle v. State*, (1982) Ind., 434 N.E.2d 872. Such evidence, however, should not be admitted where its probative value is outweighed by its prejudicial effect. *Parrish v. State*, (1984) Ind.App., 459 N.E.2d 391. Under this standard of legal relevance, it is generally held that the state may introduce evidence of a prior crime by a defendant to prove identity only if the two crimes "are sufficiently similar to support an inference that the same person committed both ..." *Bruce v. State*, (1978) 268 Ind. 180, 246, 375 N.E.2d 1042, 1077. A reasonable argument can be made that the same standard of admissibility should govern evidence of similar crimes by persons other than the defendant, offered by the defendant to prove his innocence. *See* I *Wigmore on Evidence* § 139 (3d ed. 1940 & Supp.1982).

The courts, however, have generally applied a stricter standard of relevance to evidence tending to show a third party committed the crime charged. To be admissible, such evidence concerning a third party must do more than cast suspicion on him or raise a conjectural inference that he committed the crime; such evidence must directly connect the third party to the crime charged. *Brown v. State*, (1981) Ind., 416 N.E.2d 828. The rationale for this rule is apparently that the probative value of evidence implicating a third party only tangentially is outweighed by the risk that, under a less restrictive rule, a defendant could confuse the jury with a plethora of evidence suggesting—but not really showing—that any number of other persons might have committed the crime charged. Following this approach, the court in *Brown v. State, supra*, held that tendered evidence of allegedly similar crimes by a third party did not sufficiently connect that party with the crime charged and was thus properly excluded at trial.

In light of the *Brown* decision, we find the trial court properly excluded Hinds' proffered evidence concerning an unrelated robbery committed after Hinds was arrested. The only connection between this subsequent robbery and the crime charged here is the allegedly similar modus operandi used in both. In his offer to prove, Hinds' counsel said that, in both robberies, the perpetrator wore heavy clothes and a hat, carried a gun, threatened to shoot the victims, told them to lie on the floor, emptied the cash register, and told the victims to stay down for thirty seconds after he left. Both robberies were committed in Tippecanoe County liquor stores in December, 1980.

If these similarities disclosed a strikingly distinctive modus operandi, we might be persuaded that the offered testimony was sufficient to directly connect the perpetrator of the later robbery to the robbery charged here. The methods of these two robberies, however, are hardly distinctive.

Any person wishing to rob a store might use the same modus operandi employed in these robberies. Thus, like the court in *Brown*, we conclude that the defendant's evidence of a third party's crime was insufficient to connect the third party with the crime charged here. The trial court did not err in excluding this evidence.

## VII.

█ Finally, Hinds claims the trial court erred in rejecting two of his tendered instructions. Both of these instructions would have told the jury that, in weighing identification evidence, they should consider the witness's opportunity to view the assailant, his degree of attention, the accuracy of his prior descriptions of the assailant, the level of certainty shown by the witness in identifying the defendant, and the length of time between the crime and the identification.

An instruction nearly identical to these was at issue in *Hackett v. State*, (1977) 266 Ind. 103, 360 N.E.2d 1000. In that case, the supreme court found no error in refusing an instruction on identification evidence where the trial court had given a general instruction on witnesses' credibility, telling the jury to consider the witnesses' opportunity to observe and also to consider other evidence bearing on the witnesses' testimony. In so holding the court noted, "Instructions which deal with the credibility of witnesses should generally not be so worded as to single out the testimony of any specific witness, but should apply equally to all witnesses." *Id.* at 108, 360 N.E.2d at 1003. Here, as in *Hackett*, the trial court gave a general instruction on witnesses' credibility. The trial court properly refused Hinds' tendered instructions singling out the testimony of the witnesses who identified Hinds.

The trial court's judgment is affirmed.

MILLER, P.J., and CONOVER, J., concur.