KENNETH GREENTREE *v.* STATE OF INDIANA.

[No. 875S193. Filed July 6, 1976.]

*John H. McKenna,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Kenneth W. Greentree, was convicted on March 26, 1975, of rape and was sentenced on April 11, 1975, to a determinate sentence of twenty-one years. Trial counsel for the Appellant filed a ·Motion to Correct Errors on May 20, 1975. This motion was denied on May 30, 1975, at which time the trial court appointed counsel to perfect this appeal. While appeal from the denial of this motion was pending, the Appellant petitioned the trial court for permission to file a Belated Motion to Correct Errors. The trial court granted this petition and on February 16, 1976, this court granted the Appellant permission to file a supplemental record which included the denied Belated Motion to Correct Errors.

## I.

The Appellant's Belated Motion to Correct Errors presents a problem which should be dispensed with before considering the merits of the issues presented. The Appellant's brief states that the "issue in this case is whether the Trial Court erred in denying the Defendant's Belated Motion to Correct

Errors filed by the Appellant herein." The brief then proceeds to discuss an issue *not* raised in that belated motion. The brief of the Appellee argues that the issue is waived. The Appellant responds that the issue was included in the original motion to correct errors (which is true) and was incorporated "by reference" in the belated motion (which is not true). He adds, in rather cart-before-the-horse fashion, that the fact that the issue is argued in the brief is evidence that he did not intend to exclude the original motion to correct errors.

Both arguments seem to assume that the belated motion to correct errors replaces the original motion. The Appellant apparently believes that the later motion incorporates the first. The Appellee apparently believes that the belated motion amends or replaces its predecessor to the exclusion of issues not raised in the later motion. In fact, the belated motion in effect *supplemented* the original motion to correct errors. When this court permitted consolidation of the supplemental record with that already filed, the issues presented with them were also consolidated.

The situation presented here is one in which a belated motion to correct errors was filed while appeal on the original motion to correct errors was still pending. This court faced a similar situation under our old rules of procedure in *Shack* v. *State,* (1967) 249 Ind. 60, 206 N.E.2d 614. In that case, we held that, where an appeal was pending, matters raised in a belated motion for new trial should be consolidated with the appeal as additional grounds for error. The logic of such a result here is clear. The issues have been fully preserved and presented to the trial court for its review. The purpose of a motion to correct errors under Trial Rule 59 has thus been carried out and there seems to be little reason for not reviewing each issue presented to this court. Moreover, by permitting consolidation we make unnecessary a later belated appeal and thus encourage appellate efficiency.

Post Conviction Remedy Rule 2 states that a belated motion to correct errors is to be permitted where ". . . no timely

and *adequate* motion to correct errors was filed . . ." (emphasis supplied). Here it is apparent that the Appellant contended that the original motion to correct errors was inadequate because of the additional issues which were not specifically included. Accordingly, we shall consider all issues properly raised if contained in the original or the belated motion to correct errors.

## II.

The first issue argued by the Appellant is the issue which was included in the original motion to correct errors and not in the belated motion: sufficiency of the evidence. In determining whether the verdict of a jury is supported by sufficient evidence, we look at the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. We do not judge the credibility of witnesses or weigh evidence. The verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) 264 Ind. 1, 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538.

The evidence most favorable to the State in this case reveals that on the evening of September 4, 1974, Tim Marsh Williams, age 18, picked up Beverly Wallace, age 17, at her Whiting, Indiana, home. Williams had originally called on the Wallace family home at 8:00 p.m., only to find his date was not home. When he returned at 9:00 p.m. he was somewhat angry and the two teenagers drove to the Whiting beach parking lot to talk.

The couple were parked for some fifteen minutes when two men approached Williams' van. One asked whether the police bothered couples who parked in the beach lot. Williams replied that they did not. Some fifteen minutes later these men returned. One or both of the men carried a tire iron

and the two of them, one identified as the Appellant, entered the van.

When the Appellant and his companion entered, Williams asked if they wanted his money. They indicated they did and Williams gave the Appellant $22.00. Williams and Wallace were told to get in the back seat. They remained there until two police officers approached the van. As Williams returned to the driver's seat the Appellant's companion placed a tire iron to his head and told him to "be cool." Police asked who owned the van, checked Williams' license, and left.

After the policemen left, the Appellant's companion, Danny Patrick, drove the van to another part of the beach park located in Hammond. Both men had intercourse with Beverly Wallace at that location. She denied consenting to the activity. She was also compelled by the Appellant to engage in acts of oral and anal intercourse in the back of the van and in the Appellant's car. The Appellant and Patrick left in the early morning hours of September 5. Williams and Wallace went to the Wallace home, awakened Beverly's mother, and told her what happened. The three went to the police at about 2:30 a.m.

The Appellant contends that the evidence is insufficient to prove that the Appellant's intercourse with the complainant was the product of force. The Appellant contends that he was invited by Williams to "check out" the complainant and that the resulting sexual activity was with her consent. This argument essentially asks us to weigh the evidence and judge the credibility of the witnesses, which we cannot do.

The complainant testified that the Appellant, carrying a "crowbar", came to the back of the van and "grabbed" her face. When she asked what would happen if she did not do as he wished, the Appellant replied that she did not want to find out. She denied consenting to the acts. She testified, "He was pulling my hair and just would not get off me. I was screaming and crying."

"A conviction of rape may be sustained solely on the testimony of the prosecuting witness. *Smith* v. *State* (1971), 255

Ind. 687, 266 N.E.2d 216." *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E.2d 216 at 218. In this case, there was more than this. Williams, who was kept by Patrick in the front of the van and could not see what was happening, testified that he could hear the complainant crying and screaming. He contradicted claims by the Appellant that they had all been drinking and that he had invited the Appellant to "check out" his date. The police who had checked Williams' driver's license testified that they could detect no drinking in the van at that time.

This evidence was sufficient to support the jury's verdict. The Appellant's defense alleging consent and denying the presence of force was put before the jury. It was within the province of that trier of fact to choose not to believe that theory.

### III.

The Appellant's second contention is that the trial court erred in admitting into evidence testimony regarding other crimes for which the Appellant was not charged. Those crimes were the apparent robbery of Wiliams and the acts of sodomy committed against Beverly Wallace. The Appellant has waived this issue.

The Appellant's Belated Motion to Correct Errors specified only evidence of sodomy as improperly admitted. Because the evidence of robbery was not specified, appeal on that issue has been waived. *Finch* v. *State,* (1975) 264 Ind. 48, 338 N.E.2d 629. Moreover, trial counsel for the Appellant failed to object at trial to the admission into evidence of testimony regarding both the acts of sodomy and robbery. An error not raised by proper objection at trial will not be considered on appeal unless failure to consider the error would deny the Appellant "fundamental due process." *Brown* v. *State,* (1975) 264 Ind. 40, 338 N.E.2d 498. There is no such denial of due process here.

We would note in passing, however, that the Appellant argues that the objected to testimony involves "separate and

distinct crimes." This is not the case. The alleged crimes of sodomy and robbery here were contemporaneous with the charged offense and were part of the *"res gestae"* of that crime. Such evidence is clearly admissible. *Thomas* v. *State*, (1975), 263 Ind. 198, 328 N.E. 2d 212.

### IV.

The Appellant's final contentions are that he was denied effective assistance of counsel and that he was improperly denied a speedy trial. Because both of these issues center on the same facts, we will consider them together.

The Appellant was arrested on September 5, 1974, and was formally charged the following day. Pauper counsel was appointed on September 16, 1974, and the Appellant appeared with his counsel for arraignment on September 24. The Appellant pleaded not guilty, requested a trial by jury, and trial was set for December 2, 1974.

On September 26, 1974, trial counsel for the Appellant moved for a change of venue from the judge. This motion was granted. The selection of a special judge was not completed, however, until November 26, 1974. On December 2, 1974, trial counsel for the Appellant filed a Motion for Discovery, a Motion to Suppress Identification, and a Petition for Bond Reduction. A hearing on these motions was set for December 12, 1974. This was apparently continued to January 8, 1975, at which time the case was again continued to January 14. On January 14, 1975, the trial court granted the discovery motion and set trial for March 5, 1975.

On February 26, 1975, the Appellant filed a *pro se* "Motion for Dismissal" alleging, in part, that he had been denied effective assistance of counsel and a speedy trial. This motion specifically alleged that at no time between his arraignment on September 24, 1974, until December 27, 1974, was the Appellant in any way contacted by his pauper counsel. The Appellant maintained that the motion for change of judge

filed by his counsel, with its resulting delay, was filed without his knowledge or consent.

On February 28, 1975, the trial court denied the Appellant's motion to dismiss and appointed an additional pauper attorney to represent the Appellant. On March 5, 1975, this attorney requested a continuance on the grounds that the late date of his appointment had not enabled him to consult with his client and that the pauper counsel of the Appellant's co-defendant, Danny Patrick, was involved in another trial. The trial court continued the cause to March 24, 1975. The Appellant expressed to the trial court that he did not want this continuance. The State had indicated it was ready to go to trial.

The Appellant's argument that he was denied effective assistance of counsel is based on two general propositions. The first is that he was provided only "perfunctory representation" and that the motion to dismiss should have been granted. This proposition addresses the performance of the Appellant's first attorney and cannot serve as a basis for reversal. This attorney did not conduct the Appellant's trial and we are presented with no acts on his part which could have prejudiced the Appellant's case. We can see no error in the failure of the trial court to grant the motion to dismiss, since it provided a much more logical remedy than that requested. The Appellant complained about his counsel—some two months, it should be noted, after the complained of period of noncommunication with counsel—and the trial court gave him new representation.

The Appellant also maintains that his second pauper attorney did not conduct a "zealous and active defense" during trial. It is contended that the trial attorney "totally ignored the inadmissibility and prejudicial effect" of the testimony regarding other crimes already discussed. Since that testimony was admissible, we cannot find the failure to object to this evidence to be any indication of incompetence. It is also maintained that defense counsel "failed to raise timely objections to testimony regarding

extra-judicial statements which reflected upon the conduct and state of mind of the defendant. . . ." This argument is somewhat suspicious, since the Appellant does not argue in his brief that this testimony was inadmissible. Moreover, the only reference to the record we are given is to testimony which was stricken from the record, after proper objection, and which was followed by an admonishment to the jury to disregard the stricken answer. There must be strong and convincing proof to overcome the presumption that an attorney has been competent. *Isaac* v. *State,* (1971) 257 Ind. 319, 274 N.E.2d 231 and cases cited therein. There is no such evidence presented here.

The Appellant's contention that he was denied a speedy trial is similarly unsupported. While the Appellant contended in his Motion for Dismissal that he had requested a speedy trial at his arraignment, the record does not reveal that a motion or request for an early trial pursuant to Ind. R. Crim. P. 4(B) was at any time made. The early trial rule under Ind. R. Crim. P. 4(B) is not self-executing. *Gross* v. *State,* (1972) 258 Ind. 46, 278 N.E.2d 583.

The Appellant also contends that he was denied the right to a speedy trial within the six-month period prescribed in Ind. R. Crim. P. 4(A). It should be noted that this rule does not guarantee a defendant a trial within a six-month period from his arrest or the filing of the charge against him. It merely prescribes, with exceptions, that no defendant shall be detained in jail on a charge, without a trial, beyond that period. The exceptions include cases in which the delay is caused by the defendant. Ind. R. Crim. P. 4(A); *Easton* v. *State* (1972) 258 Ind. 204, 280 N.E.2d 307.

While the Appellant personally protested delay of his trial beyond March 5, 1975, we think that much of the delay in the trial is chargeable to him. While he contends that he did not consent to the filing of his motion for change of judge, there is no reason to believe that he opposed the filing of his motions for discovery and to suppress identification and

of his petition for reduction of bond. Moreover, delay beyond the March 5 trial date is directly attributable to his Motion for Dismissal. He chose to bring to the attention of the trial court this issue of adequate representation at a time when the appointment of another attorney would necessitate a continuance beyond the six-month period. The trial court took appropriate measures to guarantee a fair trial in which we can find no error.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 351 N.E.2d 25.