Eugene BOYD, Appellant,

v.

STATE of Indiana, Appellee.

No. 382S102.

Supreme Court of Indiana.

Oct. 11, 1983.

**402**

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Judge.

Appellant was charged by way of information with nine counts of Dealing in a Narcotic Drug and Conspiracy to Deal in a Narcotic Drug. All but three counts were dismissed by the State, leaving appellant charged with two counts of dealing and one count of conspiracy to deal. He was tried before a jury and found guilty on all three counts. He was sentenced to three concurrent terms of imprisonment of twenty (20) years each.

The facts are these: In January, 1980, Indianapolis Detective Alan Simmons, reached an agreement with one Phillip Johnson, who had been arrested in December, 1979, to recommend dismissal of a variety of charges pending against him in exchange for Johnson's cooperation in an undercover narcotics investigation and operation in Indianapolis. Simmons also secured the services of one Patricia King, an Indiana State Police officer, in the operation. The plan was that in January and February of 1980 Johnson would transport Trooper King to various locations in Indianapolis where he knew drugs could be bought and sold, introduce her to known or suspected sellers, whereupon she would attempt to make a purchase. In each instance King

was "wired" with a hidden transmitter, the broadcasts from which were monitored by Simmons and his partners who were waiting nearby.

At around noon on February 1, 1980, Johnson met King, Simmons, and other officers at a prearranged location. Johnson was searched to be sure he had no money or drugs in his possession. He drove King to Billy's Lounge, an Indianapolis location where King had already made drug purchases on prior occasions. Johnson let King out of the car, and she went to the parking lot behind the lounge in which appellant and his nephew, one David Boyd, were sitting in a car. King purchased two tinfoil packets from the pair for fifty dollars. King got back in the car driven by Johnson, and they met again with Simmons. Simmons was given the tinfoil packets. Analysis showed the packets contained heroin.

At about 8:00 P.M. on February 5, 1980, King was driven to another Indianapolis location, the Barbeque Heaven Restaurant, by Johnson. The same kind of search of Johnson was made by other officers, including Simmons, before King and Johnson went into the restaurant. At the restaurant King got out of the car and located appellant in a back room. He took her to his car parked outside and sold her two tinfoil packets for forty dollars. Analysis showed they contained heroin.

Appellant claims the trial court erred by setting his trial date more than one year past the date on which he was arrested, when he did not make a knowing and intelligent waiver of his right to be tried within such time, as called for in Ind.R.Cr.P. 4(C). He also contends that in the February 26, 1981 hearing on his Motion to Dismiss, the trial judge should have given him an extensive advisement as to his speedy trial rights when appellant stated he would acquiesce to his attorney's motion for a continuance. The attorney stated that he needed the continuance because of his involvement in another trial set on the same date as was appellant's at that time.

Appellant's assertion of error in this regard is waived. There is no mention of any claim of deprivation of appellant's speedy trial right under Rule 4(C) in his Motion to Correct Error. Claims of error made on appeal that were not presented to the trial court in the Motion to Correct Error are waived on appeal. *Short v. State,* (1982) Ind., 443 N.E.2d 298; *Hooks v. State,* (1980) Ind., 409 N.E.2d 618.

Moreover, appellant's claim in this regard is without merit. The record shows appellant was arrested on April 10, 1980. Trial commenced on September 23, 1981. Ind.R.Cr.P. 4(C) requires that a defendant be tried within one year from the date of his arrest or the date on which a charge is filed, whichever is later. However, the rule also states that in computing the one year time period the time is extended "where a continuance was had on his own motion, or the delay was caused by his act . . . ." *Id.* See also *Lyons v. State,* (1982) Ind., 431 N.E.2d 78; *Little v. State,* (1981) Ind., 415 N.E.2d 44. In the case at bar appellant moved for a continuance on numerous occasions; thus the time attributable to those delays adds to the one year from his arrest in which he was required to be tried. Moreover, the record shows delays attributable to his filing of two Motions to Dismiss, said delays also being chargeable to the defendant under Rule 4(C). *Greentree v. State,* (1976) 265 Ind. 47, 351 N.E.2d 25; *Hodge v. State,* (1976) 264 Ind. 377, 344 N.E.2d 293. The total length of these delays in this case extends the one year time limit of Rule 4(C) far beyond the time in which appellant was actually brought to trial.

Finally, a prerequisite for discharge is a motion for same, when a trial court date is set beyond the one year limit or any additional period added thereto, because of prior delays chargeable to the defendant. *Martin v. State,* (1981) Ind.App., 419 N.E.2d 256; *Mayes v. State,* (1974) 162 Ind.App. 186, 318 N.E.2d 811. The record reflects no such motion by appellant. That failure alone is a waiver of the right to a trial within the Rule 4(C) time limit.

Appellant claims the trial court erred in denying his Motions to Dismiss

premised on grounds the State has procured the absence of a material witness, Phillip Johnson. The record shows that sometime prior to trial appellant became aware that Johnson was incarcerated in the New York prison system. In response to appellant's argument that this necessitated a dismissal of the charges pending against him, the State dismissed all those charges that were based on appellant's alleged sales of narcotics to Johnson himself, leaving only those based on the alleged sales to King. Appellant claims Johnson was a material witness insofar as the remaining charges are concerned because the evidence was that Johnson drove King to the locations where the sales were made, and because appellant's defense was that he had never seen Trooper King until she testified in court at his trial. He claimed at trial that Johnson had "set him up" because of Johnson's anger over appellant's refusal to bail him out of jail after Johnson was arrested in December of 1979. Appellant asserts had Johnson been available as a witness he could have buttressed his defense by adducing testimony from Johnson in this regard.

Appellant cites *Ortez v. State,* (1975) 165 Ind.App. 678, 333 N.E.2d 838 in support of his argument. In that case the defendant was alleged to have participated in numerous narcotics transactions in which a paid informant, one Wise, was instrumental in establishing contact between undercover officers and the defendant. Moreover, Wise witnessed all the alleged transactions. Then the day after the last transaction Wise was paid by the police to go to California, on the advice of the police. The defendant's numerous attempts to locate Wise were unsuccessful. After conviction the defendant appealed, contending he was denied his right to a fair trial as embodied in the Fifth, Sixth, and Fourteenth Amendments by virtue of the State's purposeful effort to make Wise unavailable to the defense. The Court reversed the conviction, stating:

> "[W]e must emphasize that we view the present appeals within the context of constitutional guarantees. While we recognize that the failure to grant pre-trial discovery is not itself a constitutional violation, each criminal defendant is guaranteed a fair trial, and this must mean that participants in the allegedly illegal act will not be unavailable *because of* the negligence or bad faith of the State. (Cites omitted.)

> \*     \*     \*     \*     \*     \*

> "We find in the State's conduct a plain disregard for the rights of criminal defendants by their use *and* unrestrained release of . . . Wise. We take issue not so much with the State's failure to act upon subpoenas and orders from the trial court, as with the effective removal of Wise from the grasp of judicial process." (Emphasis in original.) *Id.* at 693–94, 333 N.E.2d at 847.

The record does not support appellant's claim that he is entitled to reversal on the same theory as was applied in the *Ortez* case. First there is no evidence the State procured Johnson's absence from Indiana by any overt or covert act. The record simply shows that by the time of appellant's trial Johnson was imprisoned in New York. There is no indication in the record as to why appellant left Indiana or how he got to New York. The situation was quite different in the *Ortez* case, in which the evidence was undisputed that the State provided the informant with the means to travel and moreover encouraged him to do so.

Also, the record shows the State provided appellant with Johnson's address at the New York penal facility at which he was imprisoned one day before appellant filed the first of his two Motions to Dismiss premised on Johnson's absence. The fact the State willingly provided appellant with information as to Johnson's whereabouts belies the claim the State procured his absence. Also, in the *Ortez* case, state police agents spoke with the informant by telephone after he went to California but never attempted to discern his exact location, in spite of their awareness of the defendant's desire to talk to him. Finally, the record reflects that prior to trial and before Johnson went to New York appellant took his deposition. This deposition was filed with

the trial court, but no Motion to Publish was ever made at the time of the trial. The fact it was taken but was not admitted as evidence rather strongly suggests it was, in fact, not exculpatory to appellant in the manner he suggests.

■ The appellant bears the burden of producing a record that supports his claim of error. *Spears v. State,* (1980) Ind., 401 N.E.2d 331. Appellant has not borne his burden on this issue.

Appellant claims the trial court erred in sustaining the State's objections to his attorney's comments during final argument. During final argument appellant's attorney made the following statement to the jury: "It's a very serious trial, a very short trial, but you have to remember it's your destiny to see whether this man goes to prison." The State's objection that such argument was improper as a violation of the rule that the jury has no role under our current statutory scheme in determining the penalties imposed upon conviction for various offenses was sustained. *See Inman v. State,* (1979) 271 Ind. 491, 393 N.E.2d 767; I.C. § 35–50–1–1 [Burns 1979 Repl.]. Shortly thereafter appellant's attorney stated: "It's your prerogative then, ladies and gentlemen of the jury, to see that any further punishment than the eighteen months he's spent in Marion County Jail —". At that point the State objected on the same grounds as previously asserted, and the objection was again sustained. Then appellant's attorney stated, "All right, then, if I can't argue the case I hereby rest at this time."

Appellant cites *Bailey v. State,* (1980) Ind., 412 N.E.2d 56 for the proposition that counsel for the defendant is permitted to argue generally that the charge against him is a serious one. He asserts the argument his attorney attempted to make fell within the parameters of *Bailey, supra.* The State concedes that defense counsel may as a general rule argue that a particular offense is a serious one. The State contends, however, appellant's attorney's remarks as to the jury being responsible for determining appellant's fate insofar as future imprisonment is concerned impermissibly implies jury involvement in sentencing and punishment. *See, e.g., Inman, supra; DeBose v. State,* (1979) 270 Ind. 675, 389 N.E.2d 272.

■ Appellant's attorney's reference to the jury's "destiny to see whether this man goes to prison" can reasonably be construed either as a reference to the matter of punishment for the charged offense, a matter outside the jury's purview, or as simply another way of impressing upon the jury the seriousness of the charged offenses. However, we fail to see the harm to appellant caused by the sustaining of the objection, assuming *arguendo* it was error to sustain it. Given the evidence adduced it is difficult to believe the jury returned the verdict it did solely because of the interruption in appellant's attorney's final argument. We also note it was the attorney's choice to discontinue final argument. He was under no compulsion to do so.

■ We do not reverse a conviction without a showing of harm or prejudice caused by an erroneous ruling. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363.

As to the second remark by appellant's attorney regarding the eighteen month period of incarceration, the same analysis may be applied. The remark can be construed as both another way of impressing upon the jury the seriousness of the charged offenses or as a reference to penalty. However, assuming it is better construed as the former, we fail to see the harm caused by the sustaining of the State's objection, in light of the evidence adduced. The error, if any, was harmless. *Smith, supra.*

We hold there was no reversible error in sustaining the State's objection to the remarks of appellant's attorney made during final argument.

The trial court is in all things affirmed.

All Justices concur.