**Catherine NEWBAUER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 02A03–9009–CR–370.

Court of Appeals of Indiana, Third District.

April 18, 1991.

Richard J. Thonert, Romero & Thonert, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Catherine Newbauer appeals her conviction for possession of marijuana, a Class D felony.[1] She presents several issues for our review, which we restate as follows:

  I.  Whether the trial court erred in admitting testimony despite Newbauer's hearsay objections and motions to strike?

  II.  Whether the trial court erred in denying Newbauer's motions to suppress and motions for a hearing on suppression of evidence outside the presence of the jury?

  III.  Whether the trial court erred in denying Newbauer's motion for a directed verdict?

  IV.  Whether Newbauer was denied a fair trial due to prosecutorial misconduct?

  V.  Whether the trial court erred in refusing to give Newbauer's tendered Instructions 2, 11 and 16?

Since the admission of statements not subject to cross-examination supports re-

---

1. IC 35–48–4–11.

versal, Newbauer's other allegations of error will not be addressed.

On August 7, 1989, Fort Wayne police officers arrested Eugena Chilton at 1114½ Rockhill Street in Fort Wayne, Indiana. After her arrest, Chilton made a telephone call to which Police Chief Harper listened.[2] At Harper's request, Chilton placed an order for marijuana to be delivered to 1114½ Rockhill Street.

Acting upon information received from Chilton, officers began surveillance of a residence at 5441 New Haven Street in New Haven, Indiana. The officers anticipated the appearance of a white male and a white female driving a blue Chevy Blazer. However, they possessed no warrant for either of those individuals. A male and female exited the residence under surveillance, got into a blue Chevy Blazer and proceeded to Rockhill Street. When the occupants of the Blazer exited at Rockhill Street, they were apprehended by officers who had followed them. The female, later identified as Catherine Newbauer, was ordered to throw down her purse. Officer Mark Dolezal searched the purse and retrieved two plastic bags of marijuana.

### Hearsay Testimony

■ Prior to Newbauer's trial, the State disclosed the names of its anticipated witnesses. The name of Eugena Chilton was not included. Subsequently, Newbauer obtained an order in limine prohibiting hearsay testimony relating to statements by an individual not present for cross-examination.

Newbauer's trial essentially consisted of a tug-of-war between Newbauer's counsel, demanding compliance with the order in limine, and the State, seeking to establish the existence of critical information without calling Chilton as a witness. In his final argument, the prosecutor summarized his strategy: "In this case, I felt I could get in the evidence that I needed without putting somebody of that caliber on the stand, and I chose not to do that. You've got before you the evidence that you do without her." Record, p. 426.

■ Officers Pat Harper, Mark Dolezal, Bruce Kelley, Kim Phillipson, Dale Wilson and Eli Ramos testified during the State's case-in-chief. Their testimony disclosed that information from Chilton was the foundation upon which the police actions of August 7, 1989 were based. Officer Harper obtained information from Chilton and subsequently conveyed such information to the arresting officers. No officer possessed independent information connecting Newbauer with drug-related activity prior to seizure of Newbauer's purse.[3]

Newbauer's counsel repeatedly and strenuously objected to testimony which he deemed hearsay, as Chilton was unavailable for confrontation and cross-examination. Where testimony was admitted over counsel's objection, he requested admonishment to the jury. During the testimony of Officer Dolezal, the trial court instructed the jury not to consider his testimony concerning information from police sources as evidence of its truth, but only as showing what the officer knew while conducting his investigation.

Our supreme court considered the admission of testimony by a police officer relating information from an informant in *Williams v. State* (1989), Ind., 544 N.E.2d 161, *reh. denied.* The court stated that the hearsay rule does not exclude police testimony which contains out-of-court state-

---

2. Harper, acting without the benefit of a warrant or wiretap authorization, listened only to Chilton's portion of the conversation.

3. We note that information from a confidential informant may establish the "probable cause" necessary to make an arrest. *Pawloski v. State* (1978), 269 Ind. 350, 380 N.E.2d 1230, *reh. denied.* However, no attempt was made by the State to establish the reliability of Eugena Chilton. Moreover, Newbauer was repeatedly denied the opportunity to have evidence concerning a motion to suppress heard outside the presence of the jury. The trial court expressed his dissatisfaction with the contemporaneous objection rule, opining that Motions to Suppress should be made in advance of trial. After numerous requests by defense counsel, the trial court permitted a limited hearing on Newbauer's motion to suppress.

ments by third parties which is introduced primarily to explain why a particular course of action was taken. However, such admission requires a reasonable level of assurance that such testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third-party statement. Assurance may be provided by an immediate admonition to the jury concerning the limited use of the testimony. *Id.* at 162–63.

Williams' conviction was reversed, due to the admission of a police officer's statement that: "I received information, in October, from an informant, that an Ernest Williams, a black male, was involved in the robbery of a Village Pantry on the southside of Indianapolis." *Id.* The court found that the officer's statement was sufficiently specific to provide the jury with a basis for making inferences that the informant had knowledge that Williams committed a robbery and that Williams was therefore guilty. The inferences could not be tested through cross-examination. *Id.*

Similar statements were made at Newbauer's trial, including:

Officer Dolezal: "... The information I had was that the defendant and another subject was going to make a delivery to the subject that lived at 1114½ Rockhill, and they were supposed to be—to my belief, they were going to make a delivery of marijuana to the subject...."

Record, p. 170.

Officer Kelley: "I was there as backup for a drug deal that was supposed to go down, a delivery."

Record, p. 208.

Officer Phillipson: "We detained them, sir, due to the fact that we believed they had controlled substances in their vehicle."

Record, p. 264.

Prosecutor: "... certainly, after having arrested this person [Chilton] for dealing drugs and she says 'I can give you my supplier.' [Objection—Overruled]"

Record, p. 425.

The State encouraged the jury to infer that Newbauer possessed drugs which she had agreed to provide to Chilton. However, the State deliberately chose not to elicit direct testimony from Chilton, but attempted to present the substance of information gained from Chilton through "second-hand" testimony. The practical effect of such tactics is that Newbauer was denied her right to confront and cross examine her accuser. Such error is not harmless. *See Williams, supra.*

The State has argued that Defendant's Final Instruction 15, which instructed on the limited use for which hearsay testimony was admitted, prevented any prejudice to Newbauer. We agree with the State that testimony offered primarily to explain why a particular course of action was taken by police during a criminal investigation may be admissible despite containing out-of-court statements by third parties, if the jury is appropriately instructed as to the limited function of such testimony. *Johnston v. State* (1988), Ind., 530 N.E.2d 1179, 1181.

However, references to Chilton's out-of-court statements permeated Newbauer's trial. These references were not limited to officers testifying as to the basis for their actions. The prosecutor incorporated hearsay into his argument before the jury, and into many of the questions he posed to the State's witnesses. The prosecutor's statement that "I got the evidence in without having to rely upon her [Chilton]" suggests that he offered information gathered from Chilton for the truth of the matters asserted. Record, p. 427. We cannot rest assured, according to the requirement of *Williams*, that the jury did not receive the testimony to which Newbauer objected as evidence of the truth of the third-party statements.

Reversed and remanded for a new trial.

MILLER, J., concurs.

GARRARD, J., concurs in result, without opinion.