Melvin LONG, Appellant,

v.

STATE of Indiana, Appellee.

No. 46S00–9103–CR–214.

Supreme Court of Indiana.

Dec. 10, 1991.

Craig V. Braje, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

A jury trial resulted in a conviction of Murder. Appellant was sentenced to a term of sixty (60) years.

The facts are: On November 18, 1987 at approximately 10:30 p.m., Mayme Sanders, the victim in this case, was speaking on the telephone with her daughter-in-law, Connie Sanders. Mayme interrupted the conversation because someone was knocking at her door. She told Connie that the person at the door was "one of Henry Long's boys," whom she described as "high." When Mayme failed to appear for work the following day, a fellow employee and Mayme's daughter, went to her home where they found the house ransacked and Mayme fatally injured.

After speaking with Connie Sanders, the investigating officers spoke with Elmo Long and Londell Long and verified that they were elsewhere during the time of the attack on the victim. They also spoke with appellant. Appellant told them he had played cards that evening with a man he knew as "Inky," and then he watched the

ten o'clock news with his wife. During the interview, the officers noticed what appeared to be bloodstains on appellant's shoes.

When the officers spoke with Inky Smith, he told them he was not in the company of appellant that evening. They also learned that appellant's wife did not see him during the evening hours of November 18. She heard from him at 2:00 a.m. on November 19 and picked him up at a housing project at 3:00 a.m.

A search warrant was issued to obtain appellant's clothing at his home. An analysis of the blood indicated the stains on appellant's clothing and shoes matched the victim's blood type. Appellant admitted being at the victim's home earlier in the evening and stated that as he walked past her home later he noticed the upstairs bedroom window open and then discovered the front door was open. He claimed to have discovered the victim after she had died but stated that he became frightened and ran away and did not notify police because he was afraid they would blame him for the killing.

Appellant claims the trial court erred in allowing Officer Litchford to testify to his conversation with Connie Sanders regarding her telephone conversation with the victim just prior to the victim's death as well as his testimony that Elmo Long and Londell Long accounted for their whereabouts that evening. He also contends it was error to allow testimony concerning the statements of appellant's wife, Vicky Long.

However, the record shows that both Connie Sanders and Vicky Long testified at the trial and of course were available for cross-examination. We further would point out that the officer's testimony regarding the telephone conversation between Sanders and the victim was not offered for the truth of Sanders' statement but was introduced to explain the course of action taken in the criminal investigation. Therefore, it was admissible. *Johnston v. State* (1988), Ind., 530 N.E.2d 1179. The same is true with regard to Vicky Long's

statement to the officer that she was not with her husband on that evening.

■ So far as the officer's testimony regarding the alibis of appellant's brother, this again merely goes to the reasons for the course of action taken during the police investigation. It has no direct bearing on the guilt or innocence of appellant; therefore, it was admissible. *Johnston, supra.*

Appellant contends he should receive a new trial because of the ineffective representation of his defense counsel. He argues that counsel: 1) failed to move to suppress his initial statement to police; 2) failed to investigate a defense of intoxication; 3) failed to object to certain testimony; and 4) exhibited inappropriate behavior during the trial. Appellant claims his statement to the police officers was not given freely and knowingly because he was intoxicated at the time.

■ In the first place, it is not shown that appellant was so intoxicated he could not understand the nature of the situation. If intoxicated at all, it was only to the degree of possibly affecting the weight of his statement. *See Gregory v. State* (1989), Ind., 540 N.E.2d 585. In the second place, the statement by appellant was not incriminating but in fact was an attempt to make an exculpatory statement. Although in subsequent statements he changed his story, he persisted in maintaining his innocence and explained his presence at the scene as described above. Under the circumstances, we cannot say that had defense counsel posed an objection it would have been sustained. Thus we cannot say that counsel was ineffective in this regard. *See Young v. State* (1989), Ind., 537 N.E.2d 30.

■ As to appellant's claim that his counsel should have investigated the defense of intoxication, it is clear that appellant continued to maintain his innocence and claimed that when he arrived at the scene the victim already was dead. Here counsel was faced with the choice of strategy. If he were to defend appellant based upon his claim of innocence, he must attempt to convince the jury that it was not appellant who killed the victim. On the other hand, if he interposed the claim of intoxication as a defense, he must tacitly admit that appellant killed the victim but that in doing so he was intoxicated to such a degree that he was incapable of forming the requisite intent. We cannot say that counsel's decision to forego the intoxication defense was improper. *See Nadir v. State* (1987), Ind., 505 N.E.2d 440.

■ His argument that counsel failed to object to certain testimony goes to the testimony of the police officer as outlined above concerning interviews with Connie Sanders, appellant's wife, and appellant's brothers. All of these statements as stated above had to do with the direction the investigation took. They had to do with occurrences which took place near in time and place to the crime and tend to explain and complete the story of the investigation. Thus they were admissible. *Manyfield v. State* (1987), Ind., 509 N.E.2d 810.

■ In addition, appellant contends the statements by his wife should not have been admitted because it violated the marital privilege. The marital privilege protects communications between a husband and wife. *House v. State* (1989), Ind., 535 N.E.2d 103. Here, the statements made did not emanate from a communication between husband and wife but resulted from an inquiry as to whether appellant had been home that evening. Under the circumstances, counsel's objection to such evidence would have been futile.

Appellant contends that counsel failed to object to Officer Litchford's testimony regarding the coroner's determination of the time of the victim's death. During his testimony, the officer merely recited the coroner's report. In addition, Dr. Mark Keen, a pathologist who conducted the victim's autopsy, testified at the trial as to the cause and time of death. We find no lack of effectiveness here with regard to appellant's counsel.

■ As to appellant's claim that his counsel exhibited inappropriate behavior during the trial, it is true that defense counsel and the prosecution engaged in

rather unprofessional and argumentative conduct toward each other to the extent that the trial judge was forced to intervene and admonish them to cease their bickering and continue with the trial.

Appellant further points out that his trial counsel during an exchange with the judge and the prosecutor referred to a prior case in which he claimed to have been embarrassed by both the prosecution and the judge. Although this conduct was inappropriate, the trial judge quickly brought the case back into perspective. In face of the evidence presented by the State in this case, we cannot say that trial counsel's indiscretions had any major impact on the outcome of the case.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.