Howard R. CRAIG, Sr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A01–9208–CR–257.

Court of Appeals of Indiana,
First District.

May 24, 1993.

Rehearing Denied July 15, 1993.

---

ruptcy Court.

Susan K. Carpenter, Public Defender, Kenneth M. Stroud, Deputy Public Defender, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Howard R. Craig appeals his convictions of one count of child molesting, a class B felony, and one count of incest, a class D felony, for which he received ten-year and one and one-half year sentences to be served concurrently.

We affirm but vacate Craig's conviction of incest.

## I.

The State's third witness, Officer Heiden, testified on direct examination, over Craig's hearsay objection, that H.C.'s mother told him "that, uh, Howard Craig ... had put his penis into [H.C.'s] mouth."

Earlier testimony had already established that H.C.'s mother had not been present when the alleged incident occurred. Accordingly, Craig argues that the statement constitutes double hearsay which is inadmissible under the *Modesitt* rule, *Modesitt v. State* (1991), Ind., 578 N.E.2d 649. The State responds that the out-of-court statement is not hearsay at all as it was introduced to establish the fact of an investigation by police, a well-recognized exception to the hearsay rule in Indiana. *See e.g. Long v. State* (1991), Ind., 582 N.E.2d 361; *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138. The *Modesitt* decision did not affect the existing recognized hearsay rule or its exceptions. *Modesitt*, 578 N.E.2d at 654.

Hearsay is defined as an out-of-court statement offered in court to prove the truth of the matter asserted therein and rests on the credibility of a declarant who is not in court and is unavailable for cross-examination. *Miller v. State* (1991), Ind., 575 N.E.2d 272, 274; *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162 citing *Blue v. Brooks* (1973), 261 Ind. 338, 343, 303 N.E.2d 269, 273. If challenged evidence is hearsay and does not fall within one of the exceptions to the hearsay rule, then it is inadmissible. *Miller*, 575 N.E.2d at 274.

The hearsay rule does not apply so as to require exclusion of police "[t]estimony which contains out-of-court statements by third parties but [which] is introduced primarily to explain why a particular course of action was taken" during a criminal investigation. *Johnston v. State* (1988), Ind., 530 N.E.2d 1179, 1181; *Rhoton v. State* (1985), Ind., 486 N.E.2d 495. In *Williams v. State*, 544 N.E.2d 161, the Indiana Supreme Court first announced the rule that when approving the admission of such testimony, an appellate court must require a reasonable level of assurance that such testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement. *Id.* at 162–3.

Since *Williams*, Indiana appellate decisions have generally applied the *Williams* standard of review and required such as-

surance. *See e.g., McGowan v. State* (1992), Ind., 599 N.E.2d 589; *Holliday v. State* (1992), Ind.App., 601 N.E.2d 385, *trans. denied; Goldsworthy v. State* (1991), Ind.App., 582 N.E.2d 921; *Newbauer v. State* (1991), Ind.App., 569 N.E.2d 759, *trans. denied.* However, also since *Williams,* in two decisions, the Indiana Supreme Court has not applied the reasonable assurance test, permitting the content of a declarant's out-of-court statement to be used as substantive evidence to explain the course of action taken in a criminal investigation.

In *Long,* 582 N.E.2d at 362–3, the declarant was murdered and her out-of-court statements over the telephone to her daughter which implicated "one of Henry Long's boys" were admitted through a police officer based in part on this exception and in part on the fact that the daughter testified at trial and was available for cross-examination. A second statement from the defendant's wife concerning the defendant's whereabouts at the time of crime also came into evidence through the police officer and its admission affirmed on the same basis. Four justices concurred. In *Heck v. State* (1990), Ind., 552 N.E.2d 446, 451, *cert. denied,* —— U.S. ——, 113 S.Ct. 1308, 122 L.Ed.2d 696, the court found admissible "to show the reason for the officer's subsequent action," the testimony of a detective "concerning a telephone conversation he had with Donna Brady as to whether the victim had made a trip to Florida at the time of her disappearance." The content of the conversation was admitted in this case as well. Appellee's brief, p. 49, 2 *Briefs of Reported Cases* 552 N.E.2d PP443–End. Three justices concurred.

While we agree with earlier decisions which have expressed the view that the better rule is to exclude the content of a hearsay statement when the fact of the making of a statement itself will suffice to show or explain a police investigation, *see e.g. O'Grady v. State* (1985), Ind.App., 481 N.E.2d 115, 119 n. 1, *trans. denied,* the most recent statement of the law is as set forth by the Indiana Supreme Court in *Long* and *Heck.* The trial court did not err

in April, 1992 when it relied upon these cases and determined that the hearsay statement at issue could be introduced to show or explain the course of a police investigation.

## II.

■ Craig next argues that the trial court committed fundamental error when it allowed the police officer to conclude that, based upon his initial interviews with H.C., proceedings which occurred in-court at an earlier time, and H.C.'s trial testimony, H.C. had been consistent in his allegation that his father had forced him to take his father's penis into his mouth. When this testimony came into evidence, the police officer had already repeated H.C.'s allegations during the investigation and H.C. had already testified. However, the content of H.C.'s recorded trial testimony on Craig's motion in limine was never introduced at trial. Craig's counsel did object initially because the question originally incorporated all of H.C.'s pretrial statements, including some of which defense counsel had not been aware or obtained transcripts, but the question was narrowed and agreed upon by defense counsel because counsel did have all of H.C.'s recorded statements and he could cross-examine the officer about them. Craig argues that the officer's opinion is improper evidence because the opinion invades the province of the jury to determine for itself whether H.C.'s statements had been consistent and is, in essence, a form of impermissible vouching-type evidence which attests to H.C.'s truthfulness.

On two occasions, this court has held that the admission of the impermissible form of vouching testimony is not fundamental error. *Okuly v. State* (1991), Ind. App., 574 N.E.2d 315, *trans. denied; Kelley v. State* (1991), Ind.App., 566 N.E.2d 591. As defense counsel acknowledged when he agreed to the question posed by the prosecution, he had the prior statements in his possession and could cross-examine H.C. about them. Defense counsel did address inconsistencies in the prior statements on cross-examination. Under these circumstances, we conclude that ad-

mission of the officer's opinion, if error at all, was not fundamental error.

## III.

Craig next argues that the trial court committed fundamental error in permitting the testimony of C.D., H.C.'s step-sister, concerning an incident in 1987 when Craig forced her to perform fellatio upon him, in permitting the introduction of two police reports made in 1988 when the incident involving C.D. was reported, and in permitting the investigating officer to repeat C.D.'s charges against Craig. Evidence of the prior incident was offered to show Craig's depraved sexual instinct.

At trial, Craig voiced no objection to the testimony or the documents on any basis and expressly waived any objection as to the hearsay quality of the evidence. Nonetheless, Craig seeks the retroactive benefit of the Indiana Supreme Court's recent decision in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334.

■ Once again, this court has held on at least two occasions that the introduction of evidence of prior sexual misconduct which formerly would have been admissible as evidence of a depraved sexual instinct and is not admissible under Fed.R.Evid. 404(b) is not fundamental error.[1] *Stout v. State*, 612 N.E.2d 1076 (Ind.App.1993); *Ried v. State*, 610 N.E.2d 275 (Ind.App. 1993) (Barteau J. dissenting). This result is consistent with the Indiana Supreme Court and Court of Appeals decisions which have held generally that the admission of evidence of other offenses does not deprive a defendant of fundamental due process. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054; *Greentree v. State* (1976), 265 Ind. 47, 351 N.E.2d 25; *Dorsey v. State* (1977), 171 Ind.App. 408, 357 N.E.2d 280.

■ Craig argues that it was fundamental error to permit the introduction of the two police reports because of their hearsay content. But admission of the hearsay was not harmful. The first document is a police report naming C.D.'s mother's boyfriend as the alleged perpetrator, not Craig. It reflects an anonymous report from someone who had overheard a conversation among family members that C.D. may have been molested. This statement is innocuous. The document also contains a report of a statement from the caller that C.D. had been observed engaging in inappropriate sexual behavior. Evidence of similar effect was purposefully elicited by Craig on cross-examination of H.C.'s mother.

■ The second document is a two-paragraph summarization of the police officer's investigation. For the most part, it contains the officer's observations. However, it does contain the specific charges, in the first paragraph, that C.D. had accused Craig, her stepfather, of making her touch

---

1. Craig makes the assertion that by requiring *Lannan* error to be properly preserved to obtain review, we are requiring trial counsel to be clairvoyant. The implication of our decision is that counsel should have anticipated that the time was ripe for a change in the rule and objected on the ground that the depraved sexual instinct exception should be abolished. This is not to suggest that we would find it reasonable to expect counsel to anticipate every change in the law. But, as the opinion in *Lannan* suggests, there were many indicia.

For one, the rationales underlying the rule appeared to have lost vitality. When such a situation exists, the attention of the judiciary should be turned to the reasons for continued adherence to the rule. Where, as here, those rationales are no longer entirely empirically supportable, or are outmoded, a justification exists for modifying or abolishing the rule.

Besides, the exception itself had become unmanageable in its application. One of the limitations which was to curb the rule, scrutiny for remoteness, had lost its teeth. Other than a check on the kind of case in which depraved sexual instinct evidence could be admitted, no real change to the rule had come in some time. There was a growing sense of unfairness among members of the bar and judiciary.

In addition, the Indiana Supreme Court had changed in its composition. The potential for a shift in the balance of the court combined with the court's indication in the *Modesitt* decision of its willingness to reconsider long-standing rules were fairly obvious clues that the new court was not afraid to rework its evidentiary rules.

Finally, it is counsel's responsibility to anticipate the evidence which will likely be proffered by the State and prepare for its introduction. In child molesting cases, the nature of evidence which will prove the State's allegations has been fairly well-defined. There are a limited number of defense strategies. All options should always be explored.

his penis. The second paragraph repeats what C.D. had told her mother, namely, that Craig had made her hold his penis and put it into her mouth. The factual content provided by the erroneously admitted hearsay was substantially the same as that provided by the in-court testimony of the declarants. The admission of hearsay evidence is not grounds for reversal when it is merely cumulative of other admitted evidence. *Hendricks v. State* (1990), Ind., 562 N.E.2d 725, 726. The mere repetition of prior consistent statements ordinarily has no harmful effect. *Cf. Traver v. State* (1991), Ind., 568 N.E.2d 1009.

## IV.

Craig argues that he received ineffective assistance of counsel at trial. He alleges attorney error in agreeing to permit the State to ask the police officer whether H.C. had been consistent in his allegations against Craig, in failing to object to the introduction of the police reports relating to the incident involving C.D., and in failing to object to any of the evidence of the collateral crime involving C.D.

■■■■ To succeed on a claim of ineffectiveness of counsel, an appellant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Hunter v. State* (1991), Ind., 578 N.E.2d 353, 355. Judicial scrutiny of an attorney's performance is highly deferential. *Siglar v. State* (1989), Ind., 541 N.E.2d 944, 946. An appellant must also prove that counsel's failure to function was so prejudicial as to deprive him of a fair trial. A fair trial is denied when the conviction or sentence results from a breakdown of the adversarial process that renders the result unreliable. *Id.* To meet his burden of proof, Craig must overcome by strong and convincing evidence a presumption that counsel has prepared and executed his client's defense effectively. *Hunter,* 578 N.E.2d at 355. Typically, matters of trial strategy do not show counsel error unless the strategy falls below objective professional standards. *See Ford v. State* (1988), Ind., 523 N.E.2d 742, 747. In addition, when a claim

of ineffective assistance of counsel is based on counsel's failure to object to the admission of evidence, the appellant must show that had a proper objection been made it would have had to have been sustained. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 396. It is our conclusion that each of the three allegations of attorney error were matters of trial strategy which did not fall below the objective standard set by professional norms.

■■■ Craig's counsel began his opening statement by pointing out the inconsistencies and improbabilities in H.C.'s testimony. Then, he told the jury that C.D.'s testimony was admissible to show a pattern of sexual conduct. The statement continues:

And, in this case, I had to make some decisions whether I would heavily object to that kind of thing because I think this case, in fact, we have evidence which will be more persuasive with respect to the [C.D.] case than maybe we do the [H.C.] case. There aren't a lot of evidence (sic) or witnesses with respect to the [H.C.] accusation ... But, with respect to [C.D.], ... Witnesses will say [Craig] was never aware of that accusation, he never was confronted with it. At subsequent points visitation was never withheld because of that accusation. His family, his parents, his sisters, no one was ever confronted with any information concerning [C.D.]. Law enforcement filed no charges. Law enforcement officers did not questions (sic) any potential witnesses in that case which would have included his parents.... Now, when I say that we will clash with the evidence concerning the [C.D.] aspects of the case, as you listen to the evidence in this case, you're going to find that there are distinct differences between what [C.D.] said happened when the situation was explained back in January of '88 and in the situation in which she describes recently. In that description of what happened in '88, there are detail differences between that description and now. In addition, in the current description of [C.D.] of what happened in fall of '87, there will be factual elements of what

she said happened that other witnesses will say either physically could not have happened ... We have a problem in that we have young children who may have limitations in their ability to describe.... You will not hear the kinds of vicious questioning that would have occurred in the William Kennedy Smith trial in Florida. Because these are kids. Now, I think we've all concluded that that doesn't necessarily mean that kids are always truthful in situations which gets me to an element of discussion about motive.... And so, in this case, there will be some evidence, although not all, a lot of evidence concerning that issue. The State would try, I assume, to approach it that there is no motive of mother or young children to accuse father. We will indicate to you that by their own actions there appears to be potential for motive.... So, some of my questioning sometimes may seem slightly off point but its purpose will probably be so that all of us have somewhat of a feel for these kids and that we have enough background information in the children's relationships with mother, with mother's background, with the number of men relationships that mother has had in the short lives of these kids and explore the potential for whatever contamination, I guess I'll put it, that may have occurred in this case. In the same way the State expresses almost an inability to get anything more in front of you than these accusations, for us to confront them and tell you every detail of the lives of these people which may have the source of some doubt as to these accusations.... No witnesses have been at home to see the degree the children are or have been coached. Nobody in the secrets or mind of mother necessary knows what motive may lurk beneath the surface....

As this excerpt from Craig's opening statement indicates, one of Craig's trial strategies was to impugn the credibility of H.C. in part by attacking the credibility of C.D., her mother, and the investigating police officer. A review of the record indicates that this was not at all an unreasonable strategy.

When C.D. reported the incident in 1988, she described the encounter with Craig as involving only herself, not H.C. H.C. was only three years old at the time and, as counsel for Craig established, did not have an independent recollection of the incident, although he testified at trial as if he did. C.D.'s account of the incident at trial varied vastly from what had been recorded by the officer. And, Craig had evidence from H.C.'s grandmother indicating that C.D.'s claim she had been locked in the bedroom could not have been true because the door to the room had never had a lock. Craig's counsel also had made progress with H.C. on cross-examination when H.C. identified a wastebasket in pictures of the bathroom where the charged incident allegedly occurred, but the pictures reflected the possessions of the occupants at the time of trial who were different than the occupants at the time of the incident. Counsel showed that mother had a motive to encourage the children to accuse Craig because she had been turned into the welfare department for abuse of the children by father's family. And, counsel succeeded in showing a lack of thoroughness on the part of the investigating officer, both in terms of carrying out the investigation and in documenting it.

Thus, the admission of the police report was critical to the defense strategy, for it not only showed the vast differences in C.D.'s accounts of the 1987 incident but also the extreme omissions in the official report. The police officer had no more than opined that H.C. had been consistent in his allegations when Craig's counsel attacked with all of the inconsistencies and omissions in the official report of the incident involving C.D. We cannot judge the effectiveness of this tactic from hindsight. The potential prejudicial effect of the officer's conclusion had to be weighed by counsel against the potential benefit which could be derived from the timing and response. Counsel had time to think about this matter. We are not prepared to say that counsel's decision to follow this strategy was objectively unreasonable under the circumstances. Moreover, at the time, an

objection to C.D.'s testimony would not have been sustained because the evidence was admissible under the depraved sexual instinct exception. Accordingly, we conclude that Craig was not denied the effective assistance of counsel.

## V.

■■■ Lastly, Craig argues that the trial court committed fundamental error in sentencing him for both child molesting and incest when the underlying proof of both offenses was the same single sexual act. The State concedes the correctness of Craig's position on this issue. On this basis, and the basis of the authority cited, we direct that Craig's conviction of incest be vacated. See *Ellis v. State* (1988), Ind.,

528 N.E.2d 60 (Trial court committed error in sentencing for both crime of incest and rape where charging information alleged single act to support both charges); *Acuna v. State* (1991), Ind.App., 581 N.E.2d 961.

Judgment affirmed in part. The judgment of conviction of incest is ordered vacated.

BAKER and RUCKER, JJ., concur.